Brewer v. Brewer & Logan.

BREWER *vs.* BREWER & LOGAN.

1. Declarations or admissions against the interest of the party making them, that he holds as tenant or trustee for another, are admissible against him and those who succeed to his rights or estate.
2. A court of equity will decree the specific execution of a parol agreement to sell or convey land, notwithstanding the statute of frauds, when there has been such a part performance of the agreement that to refuse it would work a fraud on the party seeking its specific execution.

3. A vendee who has obtained the possession of land under a parol contract and in pursuance of its terms, and has paid the entire purchase money, is entitled in a court of equity to a specific execution of the contract.

4. T., being in possession of a quarter section of land to which he had a pre-emption right, agreed by parol with G. that G. should pay the whole of the entrance money to the government, and in consideration thereof should have one-half of the land. G. paid the entrance money accordingly, and took a patent in his own name. *Held*—That these facts were tantamount to a payment of the purchase money, and entitled T. to a specific execution of the contract.

5. When the specific execution of a parol agreement would be decreed between the immediate parties thereto, it will also be decreed between parties claiming under them, unless some controlling equity intervenes which would render it improper, according to the rules by which courts of equity are governed, to decree its specific exetion.

6. When a party purchases land in the possession of a third person, without inquiring into his rights or the character of his possession, he is affected with all the equitable rights binding on his vendor, and he cannot set up the want of notice to protect himself.

7. When the complainant's conduct has not been the basis of the acts of the person through whom the defendant claims, and his silence has not misled any one, he will not be held to have forfeited his equitable rights by the mere failure or omission to assert them.

ERROR to the Chancery Court of Sumter. Tried before the Hon. J. W. Lesesne.

THOMAS J. BREWER filed his bill against George W. Brewer and Benjamin F. Logan in the Chancery Court at Livingston. The bill alleges that in 1834 the complainant was in possession of a certain quarter section of land to which he had a pre-emption right; that being unable to pay the entrance money, his brother Geo. W. Brewer agreed to pay it for him, and let him redeem it when able; that Geo. W. accordingly paid the entrance money and took a patent in his own name, as assignee of complainant; that in 1835, complainant being still unable to redeem the land, agreed by parol with said Geo. W. that he might have one-half of said land in consideration of his having advanced the entrance money as aforesaid, and should convey the other half to complainant; that said Geo. W. accordingly gave his bond for title to one-half of the land, but never executed any conveyance,

though often requested so to do by complainant; that in 1843 said Geo. W. executed a conveyance of said land to one Maxwell; that Maxwell afterwards, by deed of trust, conveyed the same to Waldo Shearer and Philip S. Glover, who afterwards conveyed the same to one McGrew; that said land was also sold at sheriff's sale under execution against said Geo. W., and bought by McGrew; that McGrew afterwards, by quit claim deed, conveyed the land to Logan; that during all this time the complainant remained in quiet and undisturbed possession of said land, under said bond for title and parol agreement; that said conveyance to Maxwell was made without his knowledge or consent, and that Maxwell at the time of the conveyance knew of complainant's equitable title; that in 1846 one Wynn, the tenant of said Logan, made a forcible entry upon complainant and dispossessed him; that complainant recovered the possession of said land in an action of forcible entry; that said Logan afterwards instituted an action of trespass to try titles for the recovery of said land, and having the superior legal title recovered judgment against complainant; and that a writ of possession issued on said judgment which had been placed in the hands of the sheriff. The bill prays an injunction against the execution of the writ and to restrain further proceedings under the judgment, and for a specific execution of said parol agreement. Logan in his answer denies all knowledge of said parol agreement and requires strict proof of the same. He insists that he is a *bona fide* purchaser for a valuable consideration, without notice; that complainant having slept on his rights, ought not now to be heard to assert them against innocent purchasers.

The bond for title was exhibited with the bill, but there was evidence tending to show that it was executed in 1845, instead of 1835. A decree *pro confesso* was taken against Geo. W. His deposition was also taken, in which he admitted the parol contract, and the execution of the bond for titles in 1835. The chancellor dismissed the bill, holding that the bond for title was a forgery; that the deposition of Geo. W. Brewer was inadmissible on the ground of his interest; and that the other evidence in the case was insufficient to establish the parol contract.

R. H. SMITH, for plaintiff in error:

An equitable title cannot be set up at law against a legal ti-

tle.—Cansey v. Driver, 13 Ala. 818. An equitable title will prevail against creditors or purchasers of one having only a naked legal title. It need not be recorded, and possession is equivalent to registration of a title deed, and a court of equity will interfere to quiet and perfect an equitable title against the vendor and his creditor.—Morgan v. Morgan, 3 Stew. 383; Harris v. Carterid, 3 ib. 233; McGee v. Eastis, 5 S. & P. 426; Toney v. Moore, 4 ib. 347; Burt v. Cassety, 12 Ala. 739, as to possession being notice. If complainant had no written evidence, he still has a right to a specific performance, his possession and improvement taking the case out of the statute of fraud. 4 S. & P., 347; Meredith v. Nash, 3 Stew. 207. Possession by the vendee is constructive notice of the conveyance, so as to defeat a subsequent purchaser.—Smith v. Zurcher, 9 Ala. 208; Hanrick v. Thompson, ib. 409; Farnsworth v. Child, 4 Mass. 641.

A subsequent purchaser is as much affected with notice of an equitable title, as of a legal one.—Burt v. Cassety, 12 Ala. 739; Clay v. Moore, 7 ib. 742; Williamson v. Bank at Mobile, 7 ib. 920.

Purchasers and creditors, by our registration acts, are placed on same footing.—Burt v. Cassety, 12 Ala. 739. As to specific performance, Mad. Ch. 288.

Equitable title prevails against creditors and purchasers of him who holds the naked legal title.—Morgan v. Morgan, 3 Stew. 386. Toney v. Moore, 4 S. & P. 347, was a verbal contract for sale of land, and the court decreed a specific performance. In Williamson v. Br. Bank at Mobile, 7 Ala. 906, Goldthwaite delivers a dissenting opinion. The court decide that the complainant did not lose her equitable title by omission to assert in chancery. The case of Green v. Harrison, 7 Ala. 585, was for personal property, and there then was a remedy at law by trial of the right of property. Equity will decree a specific performance of a contract, where it is in writing, is certain and fair, and is for an adequate consideration. The form of the contract is immaterial.—2 Story's Eq. 751-15; German v. Machim, 6 Paige, 288; Chilliner v. Chilliner, 2 Ves. 528; Ensign v. Kellogg, 4 Pick. 1; Sug. on Ven., ch. 4, p. 12.

A person contracts in writing to sell land, and refuses to perform his contract, and then sells the land to a purchaser with notice, the latter will be treated as trustee of the first ven-

Brewer v. Brewer & Logan.

dee.—2 Story's Eq. 784; Champion v. Brown, 6 Johns. C. 402. From the time of such contract for the sale of land, the vendor becomes a trustee for vendee, and every subsequent purchaser with notice becomes subject to the same equities. The vendor treated is in chancery as the equitable holder.—2 Story, 789-90.

When specific execution will be decreed against a party, it will be decreed against all claiming under him.—Ib. 788.

When one purchases real estate under circumstances which should put him upon inquiry as to the title of him whose interest he purchases, he stands in the same situation as if he had actual notice.—Harris v. Carter, 3 Stew. 233. And if a person other than the vendor is in possession, this should put the purchaser upon inquiry, and in legal effect will be equivalent to notice.—Smith v. Zurcher, 9 Ala. 210. Hanrick & Powell v. Thompson, 9 Ala. 409, does not conflict with the above authorities. Defendant must aver in his answer that he had not notice at the time of the purchase, nor at the time title was made to him—must state when he paid the purchase money, and must allege that vendor was only pretended to be seized in fee, and that he was in possession. Without these, he is charged with notice.—Moore v. Clay, 7 Ala. 750-1.

HUNTINGTON, *contra :*

1. The injunction will be dissolved when the answer denies the allegations of the bill.—Withers' Ex'rs v. Dickey, 1 Stew. 190; 3 S. & P. 284; Long & Long v. Brown, 4 Ala. 622; Dunlap v. Clements et al. 7 Ala. 539; 10 ib. 486. The answer of one of the defendants sufficient.—Dunlap v. Clements, 7 ib. 539. When the case presented by the bill does not contain sufficient equity, the injunction will be dissolved and the bill dismissed, and damages allowed.—Williams et al. v. Berry, 3 S. & P. 284; 10 Ala. 566; 10 ib. 596.

2. There is no equity in the bill—

For want of proper parties. No decree can be had against a purchaser without notice of a lien, unless his vendor, who was a purchaser with notice, is made a party.—Singleton v. Gayle, 8 Por. 270. The bill alleges that McGrew was a purchaser with notice, and alleges facts from which notice may be inferred to Logan; hence the necessity of McGrew being made a party defendant.—Harris et al. v. Carter's Adm'r et al., 3 Stew. 383;

Cullum v. Batre, ex'r, 2 Ala. 415; Walker et al. v. Br. Bank at Mobile, 6 ib. 452; Judson v. Emanuel et al., 1 ib. 598.

There is no equity in the bill on account of the negligence of complainant. A party who seeks relief in equity must show himself ready, desirous, prompt and eager, and time frequently becomes the essence of the contract, and negligence will always bar relief against a purchaser where the complainant has not shown that he had done all he could with as little delay as possible.—Goodwyn v. Lyon, 4 Por. 307 to 314-09; Milward v. Thanet, 5 Ves. 720; Guest v. Homfray, 5 ib. 818; Alley v. Deschamps, 13 ib. 224. The bill should have been filed, if not before, at the earliest possible moment after Geo. W. Brewer conveyed to Maxwell, or shown an excuse why it was not filed.— Johnson v. Johnson, 5 Ala. 90; Goodwin v. Lyon, 4 Por. 307; Steele v. Kinkle, 3 Ala. 352; French v. Garner, 7 Por. 549.

The bill must show an excuse for not filing, when third persons are acquiring an interest; because, if a party suffers the person holding the legal title to go on and sell, with a knowledge of such sale, he cannot afterwards be heard to urge the want of authority, and unless he acts with promptness, after acquiring knowledge of such sale, he cannot be heard to contest the want of authority.—Steele v. Kinkle, 3 Ala. 352; King v. Cantrol, 4 Ired. 251; French v. Garner, 7 Por. 549; Perkins' Ex'rs v. Winter's Adm'x, 7 Ala. 868; Johnson v. Johnson, 5 ib. 90.

The bill does not state that the complainant prepared and presented a deed to Geo. W. Brewer for said land, as the law requires of him.—Reid v. Davis, 4 Ala. 83.

The complainant in his bill relies mainly upon his equity as derived from the bond for titles. Of course, if the bond be fraudulent, the complainant has no equity.

DARGAN, C. J.—Thomas J. Brewer being entitled to a pre-emption right to the north-west quarter of section twenty-one, township eighteen, range one, west, according to the laws of Congress, did, in the year 1834, make proof of his claim to the register and receiver of the land office at Demopolis, who issued to him a pre-emption certificate in the usual form. But the said Thomas J. being unable to pay the government the purchase money, George W. Brewer, his brother, advanced the same, and the complainant assigned to him the certificate. A patent for

Brewer v. Brewer & Logan.

the land was subsequently issued to George W. as the assignee of Thomas J. Brewer. These facts are not controverted, and, I think, the proof establishes that the agreement between the two brothers was, that George W. Brewer should, after the issuance of the patent, convey to Thomas J. the east half of said quarter section, and in consideration that the purchase money was advanced by George W., he was to retain the other half to himself. In the year 1839, before George W. Brewer had parted with the legal title, he stated to James Curry that there was a bargain between him and his brother that he, George, *was to pay* the pre-emption money and have one half of the land, and his brother was to have the other half; and if his brother died, his family *would be* entitled to the east half of said quarter section. These admissions were made at a time, and under circumstances, that to my mind go far to show that they correctly describe the agreement between the brothers. Thomas J. Brewer was then lying sick, and George W. was leaving home with the view to be married; and they were *made for the purpose that Curry might be a witness to the agreement.* Under such circumstances there could have been no motive in misrepresenting the agreement, and as it had not been reduced to writing, it was certainly proper that it should be made known to others who could bear testimony to the contract. The truth of these admissions, too, is to some extent corroborated by the history of the case; for, as Thomas J. Brewer was exclusively entitled to the pre-emption right, it is scarcely probable that he intended to relinquish the entire benefit of it to his brother in consideration of his paying the government price, which amounted to about two hundred dollars, when the land itself was worth over a thousand, especially as Thomas J. was poor and had a family dependent on his labor for a support. Under such circumstances it is but reasonable to suppose, that it was the intention of the parties that some portion of the benefit of this right should be reserved to Thomas J., and that he should not be excluded entirely from all benefit arising from it. Taking then the admissions of George W. Brewer thus deliberately made, together with the character of the transaction, and the improbability that it was the intention of the parties that Thomas J. should be deprived of all benefit in the right of pre-emption which belonged exclusively to him, and my mind is fully satisfied that it was the agreement between the two brothers, that

Thomas J. should have the east half in consideration of his right of pre-emption, and that George W. should have the other in consideration of his advancing the money to pay the government. Nor can it be objected that these admissions are not evidence against George W. and those who claim under him, for the rule of evidence is, that the declarations of one against his interest, that he holds as tenant or trustee of another, are admissible against him and those who subsequently succeed to his rights or estate.—1 Greenl. Ev., § 189; Varick v. Biggs, 6 Paige, 323.

The next question that arises is, whether a court of equity would decree the specific performance of this agreement between the immediate parties thereto, in the absence of any written instrument evincing its terms? It cannot be doubted but that a court of equity will decree the specific execution of a parol agreement to sell or convey land, notwithstanding the statute of frauds, when there has been such a part performance of the agreement that it would work a fraud on the party seeking its specific execution, to refuse it; and I think I may safely say, that all the cases agree in this, that if the vendee has paid the purchase money and been let into possession under the agreement, this will be considered such a part performance as will entitle him to a specific performance of the parol agreement.—2 Story Eq., § 66, 67; Cummings' Heirs v. Gill, 6 Ala. 562; Meredith v. Nash, 3 Stew. 207; Hays v. Hall, 4 Por. 375. Indeed, it may be the rule that the taking of possession without the payment of the purchase money would be a sufficient part performance to justify the court in decreeing a specific performance. This question, however, I do not consider before us. But all doubt must be removed when the possession is taken under the contract and in pursuance of its terms, and the entire purchase money is paid, that this will be held a sufficient part performance to entitle the vendee to a specific execution of the contract. Applying this rule to the agreement entered into between Thomas J. and George W. Brewer, I feel no hesitation in saying that there has been such a part performance as will entitle the former to the relief which he seeks against the latter. The right of pre-emption belonged to Thomas J., and the agreement was that George W. should have the one half in consideration of his advancing the purchase money to the government, and that Thomas J. should have the other half in consideration of his right of pre-

Brewer v. Brewer & Logan.

emption. This must be considered as tantamount to the payment of the purchase money, for nothing more was due to George W. before he ought to have conveyed according to the contract, and I think the testimony conclusively shows that from the time of the agreement, Thomas J. Brewer has had the possession and control of the east half of said quarter section, and has also made some improvements thereon. This must entitle him to a specific execution of the agreement as against George W. Brewer. The principle, too, is well settled, that where the specific execution of an agreement would be decreed between the immediate parties, it will also be decreed between parties claiming under them, unless some other controlling equity intervenes which would render it improper, according to the rules by which courts of equity are governed, to decree its specific execution.— 2 Story Eq. 96; Hays et al. v. Hall, 4 Por. 374. Thus, if one purchase lands with a knowledge of a prior contract on the part of the vendor, to convey them to another, he is affected by all the equities that bind the land in the hands of the vendor, and it is equally true that possession by the first vendee is notice in law to the second, although in point of fact he did not know of the character of the contract under which he had the possession. Thus, if a tenant has changed the character of his holding and agreed to become a purchaser, still his possession must amount to notice of his equitable title, and a subsequent purchaser is bound by it.—Sug. on Ven., 9th edit., vol. 2, side page, 291-2; 16 Ves. 249; 2 Sch. & Lef. 583; Smith & Co. v. Zurcher, 9 Ala. 208. Indeed, it may be safely laid down as an invariable rule, that if one purchase land in the possession of another without inquiring into his rights or the character of his possession, he is affected with all the equitable rights binding on his vendor, and he cannot set up the want of notice to protect himself, for seeing another in possession he was bound to inquire into the character of such possession.

It has, however, been strongly argued, that the silence and conduct of the complainant in not letting his claim be known at an earlier date, ought to preclude him from asserting it against Logan, who claims to have purchased the land without actual notice of the equitable title of the complainant for a valuable consideration. I cannot, however, discover in the conduct of the complainant any such positive act, or *such silence when he ought*

32

*to have spoken*, as should produce a forfeiture of his equitable title, or render it inequitable in him to assert it. He knew not of the conveyance to Maxwell at the time it was executed; besides, this deed was voluntary. Nor did he know of the conveyance by Maxwell to Shearer and Glover as trustees, at the time it was executed; and it may be remarked that this deed also was without consideration, moving from the grantees to the grantor, and I think the testimony insufficient to show that he was present at the public sale by the trustees when McGrew became the purchaser, and besides the fact that Logan purchased by a quit claim deed from McGrew, it is manifest that the complainant had no knowledge of this conveyance when it was executed. The acts or conduct of the complainant *have not become* the basis of the acts of any one through whom the defendant Logan claims, nor has his silence *misled any one*; he therefore cannot be said to have forfeited his equitable right, or through his act or omission rendered it inequitable or unjust now to assert it against George W. Brewer and those who claim under him.

Independent, therefore, of the bond for titles, and assuming that it was ante-dated, that its true date was in the year 1845, instead of 1835, I still think that the chancellor erred, and that the complainant is entitled to the relief that he seeks. We must therefore reverse the decree, and here render such decree as the court below should have rendered.

It is therefore ordered, adjudged and decreed that the injunction heretofore granted in this case be re-instated and perpetuated, and that the complainant, Thomas J. Brewer, be invested with the legal title to the east half of the north-west quarter of section twenty-one, township eighteen, range one, west, which said land is more particularly described in the pleadings, and that he be quieted in his possession thereof. It is further ordered and decreed that the complainant recover of the defendants, George W. Brewer and Benjamin T. Logan, his cost in this court, and said Chancery Court.