[Copeland and Wife v. Kehoe et al.]

# Copeland and Wife *v.* Kehoe *et al.*

## Bill in Equity to enforce Mechanic's lien.

1. *Married woman's law; how construed.*—While the statutes known as the married woman's law, should be construed benevolently towards the persons for whose benefit they were enacted, they should not be so interpreted and administered as to make them a shield for fraud upon creditors and others.

2. *How wife may acquire property from husband.*—Under the laws of this State a wife may acquire property from her husband by gift, or in payment of moneys of her statutory estate spent or used by him.

3. *Same; if fraudulent equity will interfere.*—Where, however, it is averred and proved that a transaction between husband and wife was a fraudulent contrivance to injure third persons, a court of equity will not hesitate to interfere to prevent its consummation.

4. *Decree of chancellor; when declared erroneous.*—The decree of the chancellor, though sustained by the *real facts* of the case, will, nevertheless, be declared erroneous, if such facts are not properly before the court, under proper averments in the bill.

5. *Good title in wife.*—Under the facts alleged in this case the conveyance vested a good title in the wife.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. NEIL SMITH GRAHAM.

The bill in this cause was filed July 20, 1874, by John F. Kehoe and Andrew J. Ramsey (appellees), partners in trade, who, on the 27th of August, 1873, entered into a written contract with Wm. P. Copeland, appellant, to build brick-work on a certain store-house in the city of Eufaula. Appellees fully executed and completed their part of the contract, and the brick-work done by them was duly received by said Copeland, and said appellees were discharged by said Copeland, after finishing and receiving such work (March 1, 1874), but failed to discharge his part of the contract, by paying all of the money which he promised to pay, having only paid a small portion thereof. The bill prays for an account between complainant and Copeland, to ascertain the amount due, under said written contract, and, if such amount be not soon paid, a sale of said store-house erected by complainants, for such payment. In answer to the bill, Copeland denies ownership in the lot, alleging the same to be in his wife, Mary Copeland, but admits a small balance due complainants. In consequence of said answer of Copeland, complainants on the seventh of

[Copeland and Wife v. Kehoe et al.]

October, 1874, filed an amended bill, averring that on the 27th day of August, 1873, at the time of said written contract, they did not know that said Copeland had conveyed to his wife the lot upon which the brick structure was to be erected, as said deed was not recorded for some time after the contract; that the condition of said deed was "love and affection," and the further consideration of the amount of money belonging to her separate estate, which the said Copeland intended to use in constructing said brick-work; that said Mary Copeland frequently saw said work progressing, but never objected; that said contract was made by Copeland for and with the consent of said wife, in accordance with the terms of said deed. To the amended bill, said Mary Copeland was made party defendant. In Copeland's answer to the amended bill, he admits that said deed was not recorded until after the written contract was signed, but avers that complainants never inquired as to the ownership of the lot, &c.; he avers that he acted solely for himself in said contract, and denies that his wife had anything to do with it, and denies that he ever intended to bind anybody but himself. In conclusion, he demurred to the bill for "want of equity," and "because the written agreement does not give complainants any equitable lien on said lot," &c. The separate answer of Mary Copeland avers that said lot is her property, and she holds the same as her estate, under a deed duly executed from her husband; she admits the consideration of the deed, as alleged in the amended bill; and denies that she ever acquiesced in the erection of said brick-work. Upon final decree, the chancellor held that complainants had a lien upon the lot and upon the building, enclosures, fixtures, &c., erected by them, and ordered a sale to be made by the register, and convey the title of said premises to the purchaser, and pay complainants out of the proceeds, and to bring into court the overplus to abide a further order of the court. The decree is now assigned as error.

A. H. MERRILL, for appellants.

G. L. COMER, contra.

No briefs came to Reporter.

MANNING, J.—A wife may acquire property from her husband by gift, or in payment of moneys of her statutory

[Copeland and Wife v. Kehoe et al.]

separate estate that he has spent or used.—*Goree v. Walthall,* 44 Ala. 161; *Northington v. Faber,* 52 Ala. 45. And if a husband, having in hand such moneys of his wife, should, upon an agreement with her, or without such an agreement, convey property to her as purchaser, in consideration of such moneys as the price thereof—although under the clause in section 2374 of the Revised Code, "husband and wife can not contract with each other for the sale of any property"—she might repudiate the purchase and insist on her right to the money, yet the husband could not take back the property without replacing the price. The statute known as the "married woman's law," ought to be construed benevolently towards the persons for whose benefit they were enacted. Of course, however, they should not be so interpreted and administered as to make them a shield for fraud upon creditors and others. And when it is averred and shown that a transaction between husband and wife was a covinous contrivance to injure third persons, a court having jurisdiction and cognizance of the case, will not hesitate to interfere to prevent the consummation of the fraud.

The evidence in the present cause creates a strong impression that the decree of the learned chancellor is right upon the real facts of the case, if they were all properly and fully before him. But the bill is deficient in material allegations, and the evidence on one point is not complete.

The bill, as amended, alleges that defendent, Copeland, the husband, conveyed the lot in controversy to his wife, a co-defendant, before the contract from which the mechanic's lien is deduced, was made with the complainants; and that the consideration of the conveyance was love and affection of the husband for the wife, and money "belonging to the separate estate of the said Mary, which the said William P. expected and intended to use in the construction" of the store-house to be erected on the lot. If done honestly, and without intent to injure anybody, the conveyance would vest a good title to the lot in said Mary. It is not averred that the husband, grantor of the lot, was insolvent, or that the conveyance was made to hinder or delay creditors, or in contemplation of contracting a debt or debts, the payment of which could not be coerced from him, and with the intent to prevent the property from being subjected to the payment of them. Nor is any intent to defraud, in any way, the complainants or any other person alleged in the bill. Besides, although it is shown by the evidence that Copeland did not have money when repeatedly called on to pay complainants

[Adams et als. v. Olive.]

for the erection of the house, it is not averred or proved that he did not have other property, out of which the debt might be made by suit at law. In this state of the case, the decree rendered, however correct it may be upon the transaction which is strongly shadowed forth, rather than established as real, by what the record contains, can not be vindicated upon any clear, legal principles or arguments. If the property was honestly conveyed to the wife, as we are bound to believe it was, in the absence of any averment to the contrary, it could not be charged by the husband with the payment of any debt, except—if it were her statutory separate estate— such as might be contracted "for articles of support of the household, suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law," if furnished without his authority.—§ 2376; *Warfield v. Ravesies and Wife*, 38 Ala. 518. And the evidence is not sufficient to show that the debt was contracted by her, or by her authority, so as to make it a charge by contract upon her property—if it was her equitable separate estate. *Mulhall v. Williams and Wife*, 32 Ala. 489; *Green v. Samuel's Administrator*, 33 Ala. 201.

The decree of the chancellor must be reversed and the cause remanded.