# Goodlett *v.* Hansell.

*Bill in Equity for Specific Performance of Contract for Exchange of Lands.*

1. *Specific performance of contract; whether sale or exchange.*—As to the principles on which a court of equity will compel or refuse the specific execution of a contract, there is no difference between a sale and an exchange of lands : whether the contract is one or the other, it must be fair and just in all its parts, and founded on an adequate consideration.

2. *Same; nature and character of estate or title.*—In the absence of an agreement as to the nature and character of the estate intended to be sold or conveyed, the parties are presumed to contract with reference to an unincumbered and indefeasible legal estate ; and the want of such a title, or the impossibility of obtaining it, may relieve the vendor from a specific performance ; but a less estate, or an imperfect title, is equally the subject of a valid contract, such as a court of equity will specifically execute, when the parties knowingly contract with reference to it.

3. *Same; part performance.*—The complainant being in possession of the tract of land which he contracted to exchange, and having paid the greater part of the purchase-money, though he had not received a conveyance ; the defendant well knowing these facts when he entered into the contract, and bargaining only for the complainant's interest under the contract with his vendor ; he cannot defeat a specific performance on account of the imperfect title, nor claim any advantage from his own failure to complete the payment of the purchase-money due to the complainant's vendor.

4. *Execution of deed; specific execution of imperfect deed.*—A conveyance of lands, to which the grantor signs his name, must be attested by at least one witness (Code, §§ 2145-6), and the attestation must be made with the knowledge and consent of the grantor ; yet a court of equity will aid an imperfect attestation, and compel a conveyance of the legal estate as intended by the defective deed.

5. *Recital and adequacy of consideration of deed ; estoppel.*—A court of equity will not compel the specific execution of a voluntary instrument, or a conveyance founded only on love and affection, or on a consideration merely nominal ; but, where the instrument also recites a valuable consideration, as an acknowledged indebtedness for a sum not ascertained, this is sufficient to support it, notwithstanding the further recitals of love and affection and a nominal consideration ; and in the absence of fraud or mistake, the heirs of the grantor can not dispute the recital, nor question the adequacy of the consideration.

5. *Contracts between husband and wife.*—The statutory prohibition of contracts between husband and wife, "for the sale of any property" (Code, § 2709), can not be construed to prevent the husband from executing, or the wife from accepting, a conveyance of property in restitution of moneys belonging to her, which he has received and appropriated to his own use : a court of equity will compel such restitution, and will sanction it when made voluntarily.

7. *Equitable separate estate of wife.*—A conveyance of lands by the husband to his wife, in consideration of moneys which he has used and appropriated, whether such moneys belonged to her equitable or statutory separate estate, create in her an equitable separate estate, which she may sell or charge as if she were a *femme sole.*

[Goodlett v. Hansell.]

8.   *Against whom specific performance will be decreed.*—When a specific per-
formance would be decreed between the immediate parties to a contract, it
will also be decreed between parties claiming under them, unless some con-
trolling equity intervenes.

APPEAL from the Chancery Court of Lawrence.

Heard before the Hon. E. H. FOSTER, as special chancellor,
selected by the parties on account of the incompetency of
Chancellor H. C. SPEAKE.

The bill in this case was filed on the 30th September, 1879,
by David C. Goodlett, against John W. Hansell and others,
children and heirs at law of John H. Hansell and Carrie R.
Hansell, his wife, both deceased, and against Terence Kelly ;
and sought the specific execution of a contract made between
the complainant and Mrs. Hansell in her life-time, for an ex-
change of lots.   The contract between the complainant and
Mrs. Hansell, according to the allegations of the bill, was
made on or about the 29th June, 1873, and was never reduced
to writing.   At the time when this contract was made, the
complainant was in the possession of a house and lot in the
town of Decatur, which he had bought from one Henry M.
Minor, through his agent, D. Walden, on the 8th January,
1872, having paid the greater part of the purchase-money, and
received a bond conditioned to make title when full payment
of the purchase-money was completed.   The agreed price of
this lot, by the contract between the complainant and said
Minor, was $1,250 ;  of which amount one-third was paid in
cash, for which a receipt was given, and possession delivered.
The complainant made other payments, erected improve-
ments, and continued in the possession of the premises until
he delivered possession thereof to Mrs. Hansell, under the
contract which the bill sought to enforce.   At the time this
contract was made, Mrs. Hansell was in possession of a house
and lot in the town of Moulton, in Lawrence county, contain-
ing eighteen or twenty acres, which she held and claimed
under a deed from her husband, John H. Hansell, then de-
ceased.   The deed from said Hansell to his wife, a copy of
which was made an exhibit to the bill, was dated the 3d Jan-
uary, 1867 ; recited, as its consideration, an "indebtedness in
a considerable sum, not ascertained, for the appropriation by
me [the grantor] of her separate property derived from her
father," natural love and affection, and one dollar in hand
paid ; and was attested by J. S. Clark as a subscribing wit-
ness.

The parties being in possession, respectively, of these two
lots, and claiming and asserting title thereto as above
stated, according to the allegations of the bill, " complainant
and said Mrs. Hansell mutually agreed with each other, on or

[Goodlett v. Hansell.]

about the 29th June, 1873, that they would mutually swap, exchange, and sell their said lots, the one for the other—that is to say, that the one would be received in payment of and for the other, on the following terms : Orator agreed to give her, Mrs. Hansell, possession and control of all his title and interest in and to said Decatur lot, and to abandon and turn over to her all his right accruing under said contract of sale to him by said Minor, as aforesaid, and give her the benefit and advantages of all payments of money made by him to said Minor, for and on account of the payment of the purchase-money of said lot, before that time by him made, which amounted to a considerable sum, to-wit, the sum of $778, or thereabouts ; and Mrs. Hansell agreed to surrender to complainant possession of said Moulton lot, and to make and deliver to him a deed of conveyance of all her title, right and interest in said lot." The bill alleged, also, that on the consummation of this contract, the parties respectively delivered and received possession of the lots agreed to be exchanged ; that Mrs. Hansell continued in the peaceable possession of the Decatur lot, until, having failed to pay the balance of the purchase-money due to Minor as stipulated, she abandoned the possession, or was compelled to surrender it to him ; and that the complainant continued in the possession of the Moulton lot, until he was dispossessed, after the death of Mrs. Hansell, under an action of ejectment brought against him by the children and heirs of said John H. and Carrie R. Hansell, as shown by the report of the case decided by this court on appeal.— *Goodlett v. Hansell*, 56 Ala. 346.

In reference to the deed from said Hansell to his wife, the bill alleged that James S. Clark, the only subscribing witness, was the brother of Mrs. Hansell, and was unfriendly to the complainant ; that he was also the attorney for the heirs in the action of ejectment, and testified to the insufficiency and irregularity of the attestation of said deed ; that said deed, notwithstanding the proof of the irregularities of its execution and attestation, " is a good and sufficient conveyance of the equitable title to said lot to said Mrs. Carrie R. Hansell, and she was entitled to have the legal title thereof conveyed to her by the heirs of said John H. Hansell " ; that Mrs. Hansell always claimed the said Moulton lot as her own, and exercised ownership over it after the death of her husband, and paid the taxes on it, up to the time when she contracted to sell it to the complainant, or to exchange it for his Decatur lot. Terence Kelly was joined as a defendant to the bill, because he was in possession of the Moulton lot when the bill was filed, and had obtained a conveyance from the Hansell children after the termination of the ejectment suit.

[Goodlett v. Hansell.]

Kelly filed a demurrer to the bill for want of equity, assigning ten special causes of demurrer, which, in substance, alleged the invalidity of the deed from Hansell to his wife, the want of title in the parties to the tracts of land agreed to be exchanged, and the invalidity of the alleged contract in several particulars. The special chancellor sustained the demurrer, and dismissed the bill, but without prejudice; and his decree is now assigned as error.

THOS. M. PETERS, with whom was J. WHEELER, for appellant.—John H. Hansell was the owner in fee of the Moulton lot, and had the undoubted right to dispose of it in payment of his debt to his wife.—*Sexton v. Wheaton*, 8 Wheat. 229; *Atwood's Heirs v. Beck*, 21 Ala. 590; *Andrews v. Jones*, 10 Ala. 400; *Young v. Dumas*, 39 Ala. 60; *Crawford v. Kirksey*, 50 Ala. 590; *Haynie v. Miller*, 61 Ala. 62; 2 Kent's Com. 320; 2 Bla. Com. 2; 2 Story's Equity, § 1373, and cases there cited. A conveyance by the husband to the wife, in satisfaction of an acknowledged indebtedness, is but the performance of a duty to which he might be compelled by a court of equity. The validity of such conveyances has always been sustained; and if not effectual to pass the legal title, a court of equity will enforce it against the heirs, or against any one claiming under them with notice.—*Davidson v. Lanier*, 51 Ala. 318; *Holleman v. De Nyse*, 51 Ala. 95; *Northington v. Faber*, 52 Ala. 45; *Copeland v. Kehoe*, 57 Ala. 346; *Haynie v. Miller*, 61 Ala. 62; *Brevard v. Jones*, 50 Ala. 221; *Barclay v. Plant*, 50 Ala. 514; *Rowland v. Plummer*, 50 Ala. 182; *Evans v. English*, 61 Ala. 416; *McMillan v. Peacock*, 57 Ala. 127; *Andrews v. Andrews*, 28 Ala. 432; *Becton v. Selleck*, 48 Ala. 226; 2 Story's Equity, § 978; 1 Johns. Ch. 261; 12 Johns. 535.

2. Hansell's deed to his wife estops him and his heirs, and those claiming under them with notice; and Mrs. Hansell's sale to Goodlett, and her representations to him as to the goodness of her title, upon which he acted, effect an estoppel against her and her heirs, or those claiming under them with notice.—*Pool v. Harrison*, 18 Ala. 514; *McCravey v. Remson*, 19 Ala. 435; *Kelly v. Hendricks*, 57 Ala. 193; *McPherson v. Walters*, 16 Ala. 714; 1 Greenl. Ev. § 22, and cases.

3. The contract between Goodlett and Mrs. Hansell will be enforced, although it was not in writing. The purchase-money was paid, and the purchaser put in possession; the sale was fair in all its parts; there is no uncertainty or confusion about any of its terms; and nothing remained to be done but the execution of the conveyance by Mrs. Hansell. Code, § 2121; 2 Story's Equity, § 751; *King v. Hamilton*, 4 Peters, 311; *Brewer v. Brewer*, 19 Ala. 481; *Cummings v.*

*Gibbs,* 6 Ala. 562 ; *Danforth v. Laney,* 28 Ala. 274 ; *Hooper v. Laney,* 39 Ala. 338 ; *Meredith v. Hatch,* 3 Stew. 207 ; *Hays v. Hall,* 4 Porter, 375.

4. Hansell's conveyance to his wife, on its face, has all the requisites of a regular conveyance of the legal title ; and she so represented it. But there is doubt about this, and this doubt is ground for equitable interference.— *Teague v. Russell,* 2 Stew. 430 ; *Bynum v. Sledge,* 1 Stew. & P. 135. Having taken jurisdiction of the main question, the court will retain the cause, and settle all the rights and equities of all the parties in the matter of controversy.— *Stow v. Bozeman,* 29 Ala. 379 ; *Scruggs v. Driver,* 31 Ala. 274 ; *Stewart v. Stewart,* 31 Ala. 207 ; *Lockett v. Hart,* 57 Ala. 198.

5. Goodlett only sold his interest in the Decatur lot, as he might lawfully do ; and this was only an equitable interest— that is, a right to a conveyance of the legal title, on completing full payment of the purchase-money. He was in possession under his purchase, and had paid the greater part of the purchase-money ; and might have compelled a specific performance of the contract. This right and interest he sold to Mrs. Hansell ; and if she has failed to complete the contract with his vendor, and thereby forfeited all interest acquired by the contract, this is her own fault and negligence, and can not prejudice the rights of Goodlett. To refuse a specific performance on this account, when Goodlett can not be placed in *statu quo,* would be a fraud on him, and would damage him, as the bill shows, to the amount of $1,000. *Rhodes v. Otis,* 33 Ala. 600 ; *McPherson v. Walters,* 16 Ala. 714. The court will compel the heirs to do what the ancestor bound herself to do.—Story's Eq. Pl. §§ 75,160. Kelly claims under Mrs. Hansell, and can not deny her title.— *Pollard v. Cocke,* 19 Ala. 188 ; *Brooks v. Young,* 4 Ala. 584 ; *Long v. Williams,* 57 Ala. 259.

W. P. CHITWOOD, and H. A. SHARPE, *contra.*—The equity of the bill hinges, mainly, on the validity of the conveyance from John H. Hansell to his wife, which conveyance has, in a former suit between these parties, in which the question was directly presented and decided, been held void and inoperative.— *Goodlett v. Hansell,* 56 Ala. 346. The bill states no facts which can avoid the effect of that decision, and it is conclusive of the question. The deed being fatally defective as a conveyance—being void and inoperative—it is as ineffectual to convey an equitable, as a legal estate ; nor can any effect be attributed to it, as raising an implied or resulting trust. It contains no terms of a contract, no promise or agreement to do anything ; and, consequently, it shows nothing which

the court can lay hold of and enforce. It does not even show or contain a memorandum of a contract, sufficient to take it out of the operation of the statute of frauds, because it wholly fails to state the amount of the consideration.—*Adams v. McMillan*, 7 Porter, 73 ; *Carter v. Shorter*, 57 Ala. 253. Courts of equity are as much bound by the statute of frauds as courts of law, and are not at liberty to disregard its provisions.—1 Story's Equity, § 754. Contracts between husband and wife, for the sale or conveyance of property, are expressly prohibited by statute (Code, § 2374) ; and a contract can not be implied, in the face of an express statutory prohibition. In all the cases in which contracts between husband and wife have been enforced, the contracts were made prior to the passage of this prohibitory statute. A void contract will not be specifically enforced.—1 Brick. Digest, 692, and cases cited. "Neither the moral obligation of the husband to provide for the wife, nor the fact that he has received property by her, nor both together, will justify a post-nuptial agreement on his part to make a settlement on her."—*Andrews v. Andrews*, 28 Ala. 432. The moneys received by Hansell, belonging to his wife, as recited in his conveyance, were her statutory separate estate ; and the character of that estate could not be thus changed, with or without her consent. *Coleman v. Smith*, 55 Ala. 363 ; *Brevard v. Jones*, 50 Ala. 221 ; *Barclay v. Plant*, 50 Ala. 516. The facts alleged in the bill show no estoppel against the heirs, who were minors when the alleged transactions occurred. On all the points of the case, the appellees rely on the opinion of the special chancellor, as an unanswerable argument on the law and the facts.

BRICKELL, C. J.—The agreement made by the appellant and Mrs. Hansell was an exchange, rather than a sale of lands. There is, however, no material difference because of the character of the contract, in respect to the principles upon which a court of equity must proceed in compelling or refusing specific performance. Whether the one or the other, the agreement must be fair and just in all its parts, and founded upon an adequate consideration : if wanting in either of these essential elements, the court will not interfere.—*Gould v. Womack*, 2 Ala. 83 ; *Casey v. Holmes*, 10 Ala. 776.

' The want of consideration, upon which the appellees rely, is the want of a legal title in the appellant to the "Decatur lot," as it is designated in the bill, which was the consideration for the "Moulton lot," as it is designated. When there is a sale or exchange of lands, and the agreement is silent as to the nature and character of the estate or interest in and to the lands intended to be sold or conveyed, it may be admit-

[Goodlett v. Hansell.]

ted that the presumption arises, that an indefeasible legal estate, not impaired in value by incumbrances created by, or suffered, or known to the bargainor, is intended to pass to, and be acquired by the bargainee; and the want of such an estate will bar the bargainor from relief by a specific performance of the contract under the decree of a court of equity. But lesser estates and interests in lands are the subject-matter of sale or exchange, and may form the consideration of contracts, fair and just in themselves, the specific performance of which courts of equity will compel.

Though the appellant had not the legal estate in the "Decatur lot," he had possession, and the right of possession, and an inchoate, imperfect equity, which, on the final payment of the purchase-money, would ripen into a perfect equity. The contract with his vendor may have rested w parol, not manifested by any writing which would sat. statute of frauds; yet, there was the payment of the part of the purchase-money, and he had been let into, remained in undisturbed possession; which, according to established doctrine of a court of equity, would have wit drawn the agreement from the operation of that statute, and which, by the express words of the statute now of force, forms an exception to it.—Code of 1876, § 2121, subd. 5. The relation subsisting between him and the vendor, Minor, is well defined in a court of equity. For many purposes, he would be regarded as the owner of the land; the vendor holding the legal estate in trust for him, and he holding the purchase-money in trust for the vendor. The equity with which the appellant was clothed, was an estate or interest in lands, having the properties and incidents generally of a corresponding legal estate. It was subject to the payment of his debts, capable of alienation, or of devise, or of descent to heirs. It was, consequently, a valuable consideration for the agreement of exchange; and of its adequacy there is no reason for doubt, in view of the averments of the bill. The precise character of the estate or interest was known to Mrs. Hansell, when she entered into the exchange, and it was upon the basis of its nature and character that the contract was made. Possession, accompanied with a transfer of the right to convert the equity into a legal estate by the payment of the purchase-money unpaid by the appellant, was the interest she stipulated to acquire, and was all that appellant stipulated to transfer. This she did acquire; and the appellant, on his part, performed the agreement fully. The subsequent loss of the possession of the lot was not because the appellant had not, and did not transfer, all the claim and interest in and to it which it was intended he should transfer, but was

in consequence of her own default in paying the remainder of the purchase-money, as it was intended and contemplated she would do. As between her and the appellant, the duty and obligation of making the payment rested wholly upon her; and if, instead of resorting to the lien on the lot, the vendor had compelled the appellant to make the payment, a court of equity would have declared and enforced a lien on the lot for his repayment.—*Burns v. Taylor*, 23 Ala. 255.

When, under a parol contract to sell or to convey lands, there is performance by the party seeking specific execution, to such an extent that it would be a fraud upon him to withhold relief, a court of equity will grant it, notwithstanding the statute of frauds. It is the prevention of fraud, the statute was not intended to enable a party to commit with impunity, that is the substantial ground upon which the court interferes, compelling the specific performance of contracts, in part executed, which are within the words of the statute; and not upon any notion that the court has the power to dispense with the statute, or that it is not as obligatory in equity as at law.—1 Story's Eq. § 759 ; 1 Brick. Dig. 694, § 798; *Brewer v. Brewer*, 19 Ala. 481. Applying the rule to the case as made by the bill, it is obvious that the appellant has executed wholly the agreement on his part, relying upon Mrs. Hansell to execute it upon her part; and if she, or those now claiming under her, can be allowed to refuse performance, he must suffer grievous injury, and can not be restored to the condition in which he was when he performed. By the default of Mrs. Hansell, the opportunity of completing the equity in the "Decatur lot" has been lost; and the "Moulton lot," if the statute of frauds could avail, would be taken from him, without compensation, and without fault on his part. Whatever may have been intended, such a result is a fraud a court of equity will not suffer the statute of frauds to shelter.

It is insisted, in support of the demurrer, that the bill shows that Mrs. Hansell has no title to the "Moulton lot"— that the title resides in the appellees, heirs of her deceased husband. There may be cases, in which a court of equity will not intervene and compel a vendor to perform specifically the contract of purchase, because his title is so defective that performance is practically impossible. But this case is not of that character; for, in any event, it is certain that Mrs. Hansell had a perfect equity, if she had not the legal estate in the premises. On its face, the conveyance to her, executed by her husband, is sufficient to pass the fee simple at law. It has every component and requisite of a deed of bargain and sale, founded on a pecuniary consideration—the parties

[Goodlett v. Hansell.]

and the premises described, apt words of conveyance, signed by the grantor, and attested by a subscribing witness. The invalidity imputed to it rests upon extrinsic circumstances, the first of which is, that the attestation by the subscribing witness was his own voluntary act, made without the request, knowledge, or consent of the grantor, and, of consequence, is not such an attestation as is essential to the validity of a legal conveyance of lands. Under our statute, when the grantor writes his own name, an attestation by at least one subscribing witness, or an acknowledgment of execution before an officer having authority to take and certify the acknowledgment of conveyances, is an indispensable requisite of a legal conveyance of lands.—*Goodlett v. Hansell*, 56 Ala. 346. The attestation must, of course, be made with the knowledge and consent of the grantor, for testimony of the fact of execution by him. When made without his knowledge and consent, it is not the attestation the statute requires, and the instrument is wanting in an essential element of a legal conveyance of lands. Though wanting in the attestation of a subscribing witness, or of an acknowledgment before a proper officer, and insufficient to pass the legal estate, the instrument manifests not only an agreement to convey, but an actual present conveyance of the legal estate, upon a valuable consideration, and in equity passed that estate to the grantee, as against the grantor, or his heirs, or all privies in estate having notice.

A court of equity, looking beyond the forms of contracts, to their substance, and the ascertained intention of the parties, will cure the omission of a subscribing witness, and compel the conveyance of the legal estate. This doctrine said Ch. KENT, in *Wadsworth v. Wendell*, 5 Johns. C. 231, "is too well established, and is too just in itself, to admit of any doubt." And in the case of *Morse v. Faulkner*, 1 Anst. 14, cited by him, it was said by Ch. B. EYRE, "It is clear, that where there is an agreement to convey, or a defective conveyance by a person then having title actually, that would be such an equity as would bind the lands in the hands of the heir." The books abound in cases, in which purchasers with defective conveyances have been assisted by a court of equity, against the vendor, or his heirs, or devisees, or voluntary donees, or assignees, or purchasers having notice; the defective conveyance being regarded, at least, of the dignity of an agreement to convey, and, for many purposes, as an actual conveyance.—*Barr v. Hatch*, 3 Ohio, 538; *Warrick v. Edwards*, 1 Hoffman's Ch. 391. It is a want of title, or the impossibility of acquiring it, which may relieve a vendor from specific performance of the contract of purchase; and not a

title, to perfect which a resort to a court of equity may be necessary, and which, in the view of that court, is equal to, and binds the legal estate.

But it is urged there was the want of a meritorious or valuable consideration for the conveyance to Mrs. Hansell, from her husband; and, of consequence, it is incapable of enforcement specifically, against his heirs. The consideration is recited in the conveyance in these words: "Whereas I, J. H. Hansell, am justly indebted to my wife, Carrie H. Hansell, in a considerable sum, not ascertained, for the appropriation by me of her separate property derived from her father: Now, in consideration of the premises, and of natural love and affection, and of the sum of one dollar to me in hand paid," &c. When a valuable consideration is necessary to support a deed, the bare recital of a nominal pecuniary consideration will not, of itself, be regarded as evidence of a valuable consideration. This must be true, especially, when there is also the expression of a consideration merely good, as the love and affection of a husband for a wife, or of a parent for a child. Such deeds or instruments, though founded upon a mere nominal pecuniary consideration, may fall within the technical definition of voluntary instruments, the specific execution of which courts of equity may not assist.—*Felder v. Harper*, 12 Ala. 612; *Kinnebrew v. Kinnebrew*, 35 Ala. 628.

We pass, without attaching importance to it, the expression of the payment of *one dollar*, as the consideration of the instrument; because the indebtedness to the wife, expressed and acknowledged, though unascertained in amount, of itself forms an adequate valuable consideration which will support it, and entitles the grantee, and all who claim under her, to the assistance of a court of equity, in the divestiture of the naked legal estate descending to the heirs of the husband. When a consideration is expressed in a conveyance, in the absence of fraud or mistake, it may not be denied or disproved, or its adequacy controverted, by the grantor, or his heirs, or privies in estate, to defeat the conveyance, or the uses and purposes therein expressed. —*Morse v. Shattuck*, 4 N. H. 229; *McCrea v. Purmort*, 16 Wendell. The recital of consideration is open to contradiction by the creditors of the grantor, assailing the conveyance for fraud. It is also open to explanation generally, when the grantor may be called to answer in damages for a breach of covenant, and in other cases, a reference to which it is not now necessary to make. The rule may, nevertheless, be stated generally, that when a particular consideration is recited, not merely nominal, the grantor or his heirs, in the absence of fraud or mistake, are

estopped from a denial of its adequacy. Whatever was the amount of the debt to the wife, it was by the grantor esteemed as an adequate consideration for the lands conveyed,—their equivalent in value. There was no fraud or imposition, and he had full capacity for himself to determine whether the debt to the wife, the amount of which was unascertained, but which he had, as it must be presumed, the means of ascertaining, was an adequate consideration. Inadequacy of consideration, unless accompanied with some circumstances of hardship, or of oppression, or evidence of fraud, is not a ground for refusing specific performance of a contract.— Fry on Specific Performance, §§ 275–285.

The next ground of opposition to this instrument is, that it must be intended the estate of the wife, appropriated by the husband, was her statutory, as distinguished from her equitable estate ; and, of consequence, the conveyance falls within the inhibition of the statute—" husband and wife can not contract with each other for the sale of any property." Code, § 2709. Whether the presumption would arise, from the recital of the conveyance, that the estate appropriated by the husband was the statutory or equitable estate of the wife, it is not material to consider. In either case, the duty of the husband, moral and legal, was to make restitution, compensation to the wife, as full and adequate as he would make to a stranger to whom he was under a like duty. A court of equity would have compelled him to the duty, whether the estate was the statutory or the equitable estate of the wife ; and having done it voluntarily, the court will support it as well done.— *Wilson v. Sheppard*, 28 Ala. 623 ; *Marks v. Cowles*, 53 Ala. 499. The clause of the statute referred to has never been construed, nor can it be properly and justly construed, as a restraint upon the power of the husband in the peformance of this duty, from conveying property to the wife in satisfaction of his liability to her thus created, or as depriving her of the capacity to accept the conveyance.—*Davidson v. Lanier*, 51 Ala. 318 ; *Northington v. Faber*, 52 Ala. 47 ; *Copeland v. Kehoe*, 57 Ala. 246. Such a conveyance, of necessity, creates in the wife an equitable separate estate, as to which she becomes a *femme sole*, having full capacity to charge, sell, or otherwise dispose of it.—*McMillan v. Peacock*, 57 Ala. 127.

The case, then, as made by the bill, and admitted by the demurrer, resolves itself into a very narrow compass. There was an exchange of lots by parol, made by the appellant and Mrs. Hansell, he having on his part fully performed the contract. She accepted the performance, enjoying for a time its benefits, and losing full enjoyment only by her own default

(11)

[Derrick v. Brown.]

in keeping the contract. There was by her part performance of the contract, by placing the appellant in the possession of the "Moulton lot;" and all that remains to full performance is clothing him with the legal estate, which can be acquired from the heirs of her deceased husband, to whom it has descended. The contract is well defined—there is no uncertainty about it; and it is of the class of contracts a court of equity is in the constant habit of compelling parties and their privies, whether in blood or estate, to perform specifically. For there can be no doubt, that where specific performance will be decreed between the immediate parties, it will also be decreed between parties claiming under them, unless some controlling equity intervenes, rendering it improper. *Brewer v. Brewer*, 19 Ala. 489. It is scarcely necessary to say, that Minor was not a necessary or proper party to this bill, having no right or interest in the matter of controversy.

The demurrer to the bill was not well taken, and ought to have been overruled. A decree will be here rendered, reversing the decree of the chancellor, overruling the demurrer, and remanding the cause.