# Watson v. Appleton.

### Bill to Enforce Vendor's Lien.

(Decided May 13, 1913.   62 South. 765.)

1. *Witnesses; Competency; Payment.*—Where the suit was by an administratrix to enforce a vendor's lien alleged to have been held by her intestate neither the administratrix nor the purchaser is competent under the statute to testify to transactions with or statements by such intestate regarding payments claimed to have been made by the purchaser.

2. *Payment; Application; Priority.*—Where a purchaser of land owed the vendor two unsecured debts which matured prior to the note for the balance of the purchase price of the land, payments made by him to decedent will be applied by the law first to the older debts. in the absence of any competent evidence to show that such payments were applied by the parties to any specific debt.

3. *Vendor and Purchaser; Vendor's Lien; Payment.*—The evidence examined and held not sufficient to show that the purchaser made a certain payment to the vendor in his lifetime which the purchaser claimed to have made.

APPEAL from DeKalb Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Emma Watson as administratrix against A. B. Appleton to enforce a vendor's lien on certain lands sold by complainant's intestate. From a decree rendered for a less amount than that claimed complainant appeals. Reversed and rendered.

ISBELL & SCOTT, for appellant. Neither appellant nor appellee was competent to testify as to transactions with or statements made by decedent in his lifetime concerning the matter here in dispute.—Sec. 4007, Code 1907; 128 Ala. 617. It is a familiar principle that the law applies payment to the older debts in the absence of a specific direction and agreement between the parties, and it follows that the chancellor erred in confirming the report of the Register, and in not sustaining the exceptions thereto.

I. M. PRESSLEY, for appellee. On the authorities cited by appellant the administratrix was not competent to testify as she did in this case. The receipts were prima facie evidence of payment, and the burden was on complainant to show that they were given for other than payments on the note.—19 A. & E. Enc. of Law, 1120-22.

SOMERVILLE, J.—Appellant filed her bill, as administratrix of her deceased husband's estate, to fore-

close a vendor's lien upon certain land sold by him to respondent; the debt being evidenced by respondent's promissory note for $600, executed on December 7, 1908, and payable to G. M. Watson on January 15, 1909. Respondent claimed a number of credits based on payments of money and merchandise to the decedent or to complainant, and in stating the account on a reference the register allowed all of the items of credit claimed, aggregating $451.59, leaving a balance due to complainant of $286.35. Complainant's exceptions to the register's report were overruled, and the chancellor in his final decree confirmed the report allowing these credits and fixing the indebtedness of respondent at the sum stated. In stating the account the register evidently did no more than compile the several items of credit substantially as claimed by respondent, and strike a balance on that basis.

The testimony of both complainant and respondent with respect to transactions with or statements by the decedent affecting his estate was, of course, incompetent under our statute, and should have been disregarded.

It appears from legal testimony that respondent originally owed the defendant $600 on the note, due in January, 1909, that he owed decedent $150 for land rent in 1907 or 1908, and that some time previously he owed decedent $40 for a wagon. Complainant admits that the sums of $10 and $45 were paid on the note, and admits, also, that respondent paid to decedent or herself during 1909 and 1910 money and merchandise amounting to $125. In addition to this, it appears from the testimony of respondent's brother that respondent paid $60 to decedent in February, 1911. There is no legal evidence to show that any of these payments were made on the note, excepting $28 paid in February, 1909,

[Watson v. Appleton.]

and receipted for by complainant in decedent's name, and for $10 paid in October, 1909, and receipted for by complainant in her own name. Nor is there any legal evidence to show that the debts due from respondent to decedent for land rent and for the wagon—$190— were ever paid, unless in whole or in part by the several unapplied items above referred to. Receipts for money are, of course, prima facie evidence of its payment, but the signature of the receiptor must be proved, and by no competent evidence does it appear that decedent ever signed any of these receipts.

To summarize: We find that respondent owed decedent three several debts, those for rent and the wagon being unsecured, and older in point of maturity than the debt secured by the note; that four payments aggregating $93 were applied to the note by the parties; and that several payments aggregating $147 were made to decedent on account without specific application by either party. It results that, as to the last amount, the law must make the application. In accordance with settled principles, these unapplied payments will be applied to the older items of indebtedness first.—*Connor v. Armstrong,* 91 Ala. 265, 9 South. 816. Thus applied, they are exhausted without completely satisfying the older unsecured debts, and the debt evidenced by the note is not affected thereby. Complainant therefore shows an indebtedness of $600 due from respondent on the note on January 15, 1909, with interest from that date, reduced by credit payments as follows: October 1, 1909, $10; December 11, 1909, $28; 1910, $10; April 27, 1911, $45. Calculated on the basis of annual rests, the balance now due on the note is $715, and complainant is on the evidence entitled to a decree for that amount.

We have disallowed the item of $150 claimed by respondent to have been paid to decedent on February 18, 1911. Respondent's testimony as to this is, of course, incompetent, and it finds support only in the testimony of Joe Watson. This witness indeed says he saw respondent pay $150 to decedent, but he says he can neither read nor write, and did not count the money. He says decedent wrote out the receipt with a fountain pen; while respondent declares that he himself wrote it out, and signed decedent's name to it. Witness and respondent both say that the transaction took place out in a field where no one else was present—a very unlikely place. Witness admits that complainant had recently attached his crop and taken a judgment against him for $400, certainly a basis for the existence of hostile bias on his part. Moreover, the testimony of Dr. McWhorter, W. W. Herring, and complainant satisfies us that decedent was confined to his bed on February 18, 1911, and did not leave the house. And, finally, respondent admits that he filed a petition in bankruptcy in 1911, and in that proceeding swore that he owed $600 on this land, after the time when these payments are alleged to have been made.

This is no less than an admission under oath that nothing had then been paid on the note except the interest, and its significance is overwhelming when it is remembered that the interest on the note up to that time—a little over two years—was about $100, while the amount we find to have been paid on the note was $93. Respondent cannot justly complain if this court accepts the verity of his oath delivered *ante litem motam,* rather than his later contradictory claim prompted, we may well assume, by the existence of this litigation.

The decree of the chancery court will be reversed as to its finding of the amount due complainant on the note, and a decree will be here rendered. for $715, instead of $286.35. In all other respects the decree of the lower court will be adopted and followed as the decree of this court.

Reversed and rendered.

ANDERSON, MAYFIELD, SAYRE, and DE GRAFFENRIED, JJ., concur.