38 So.2d 484

**NIEHUSS v. FORD.**

**2 Div. 259.**

Supreme Court of Alabama.

Jan. 20, 1949.

530

Scott & Porter, of Chatom, for appellant.

J. Massey, Edgar, of Butler, for appellee.

FOSTER, Justice.

This suit was begun at law by appellant in an action against J. R. Nettles for damages for cutting timber on a certain tract of land. Defendant paid the money into court, and suggested a claimant who, however, did not claim it, but E. O. Ford intervened as claimant. On motion of plaintiff, who is appellant here, the cause was removed to equity. Appellant then filed in the cause his bill in equity, and no issue is here made as to its sufficiency.

Appellant and Ford each claimed the timber under a common source, Fannie Ruffin. It is here argued as if the rights of the parties are determined by the validity and effect of their respective claims. We will so treat it. No point is made as to form or jurisdiction. The complainant claims the timber under a deed purporting to be signed by Fannie Ruffin March 21, 1939, recorded December 11, 1939. It purports to convey the timber in question to appellant, and provides that "this lease is for a term of five years from the date of this instrument." It is not witnessed, but purports to be acknowledged before appellant, who was the grantee in it, describing himself as a notary public and with his seal attached.

Respondent Ford, by answer, claims that he was an innocent purchaser for value without notice of appellant's claim; that Fannie Ruffin did not sign the deed; that it is void because not witnessed or acknowl-edged; that it has been altered by changing the term expressed in it from two to five years; that it was procured by fraud in misrepresenting its contents and in taking advantage of an old ignorant negro woman. Ford set up title to the timber by deed from the heirs of Fannie Ruffin dated March 29, 1943, after her death, to Mary S. Barber, and a deed by Mary S. Barber to Ford dated December 1, 1943.

The decree of the court concluded that the deed to appellant was void because not witnessed nor acknowledged, but that since appellant paid $80.00 to or for Fannie Ruffin, awarded $80.00 to appellant, and the balance to Ford, after paying the costs out of the fund in court. Appellant is complainant below. Ford is not complaining.

The deed, not witnessed or acknowledged, does not pass the legal title. But we are in equity. The question is whether it conveys an equitable right which will be here enforced, and, if so, whether the record of it before the execution of the deed under which Ford claims is notice to him and his predecessor of its contents.

We will undertake to show that such a deed does have effect in equity, and its record is notice to subsequent purchasers.

■ A deed is not self-proving by reason of the record of it, unless it is acknowledged or proved according to law. Title 47, section 104, Code. But there is no statutory requirement that an instrument of any kind must be acknowledged or attested or proven to make it subject to the recording statute, providing it complies with the requirements of Title 47, section 95, Code. By virtue of that statute, an instrument shall be admitted to record if it purports to convey an interest in real estate, and if executed according to law. And if those requirements are met and it is recorded, such record operates as notice of its contents to those to whom the recording statute applies. Title 47, sections 95 and 102, Code.

A material inquiry here is whether the deed under which appellant claims the timber on the land in question is such as was authorized by Title 47, section 95, Code, to be recorded.

It is in form a warranty deed, containing all the essentials in its body necessary to pass a legal title to the timber on the land, to revert to the grantor after a term of five years. Title 47, section 49, Code. It is signed by Fannie Ruffin, the owner, who apparently wrote her own name. It is not witnessed nor acknowledged so as to comply with the requirements of Title 47, section 22, Code. It therefore is not "executed in accordance with law," to pass the legal title. But section 95, supra, does not deal with the legal title alone, but with any interest in real estate as well as with the legal title. If the instrument purports to convey an interest in real estate and is properly executed for that purpose, it may be admitted to record, which carries notice under section 95, supra.

The language of the instrument would be sufficient to pass the legal title if properly executed for that purpose. But it shows on its face that it is not properly executed to do so. When such an instrument shows that it is not attested as required by law, it shows on its face that it does not convey the legal title. But when it shows the signature of the ·grantor sufficient to satisfy the statute of frauds, Title 20, section 3(5); Title 1, section 2, Code, which does not require the signature to be attested if the party can and does sign his own name, Bickley v. Keenan, 60 Ala. 293, and when, as thus executed, it purports to pass an interest in real estate, though only an equitable interest, it is within section 95, supra.

When a deed purports to convey the title to real estate, is signed by the grantor and delivered, but not witnessed or acknowledged as required by law (sections 22 and 24, Title 47, Code), though inoperative to pass the legal title, it is then in legal effect an agreement to execute an instrument passing the legal title. Lowery v. May, 213 Ala. 66(19), 104 So. 5; Branch v. Smith, 114 Ala. 463, 21 So. 423; Roney v. Moss, 74 Ala. 390; Goodlett v. Hansell, 66 Ala. 151. So that the relation of vendor and purchaser is thereby created under circumstances when the purchaser has an equitable interest in the land. Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342; Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35; Mitchell v. White, 244 Ala. 603, 14 So.2d 687. This is a perfect equity when the entire purchase price is paid, as here shown.

A deed therefore purporting to pass the legal title of land signed by the grantor and delivered to the grantee, but not sufficiently attested or acknowledged is "executed in accordance with law," to purport to pass an interest in real estate to the grantee, and therefore may be admitted to record under section 95, supra, which carries notice, as provided in that statute, also in section 102, Title 47, Code.

The respondent who claims under the heirs of the deceased grantor after the record of said deed is therefore chargeable with notice of it.

The claims next presented by Ford are by him sought to be proven by the testimony of Penton Ruffin, an heir of Fannie Ruffin, and grantor in the deed under which Ford claims. There was objection under Title 7, section 433, Code. We will discuss that claim.

The principle has been established and adhered to by a long line of our cases "that as to all such testimony the living party to the original transaction is not a competent witness *in favor of those who claim under him as against either* the deceased party * * * or against those who claim *in privity with such persons, whether by descent or purchase."* Jernigan v. Gibbs, 206 Ala. 93, 89 So. 196, 197; Key v. Jones, 52 Ala. 238; Boykin v. Smith, 65 Ala. 294; Barnes v. White, 195 Ala. 588, 71 So. 114; Guin v. Guin, 196 Ala. 221, 72 So. 74; Federal Land Bank v. Curington, 233 Ala. 263, 171 So. 361.

The following statement of the principle by Brickell, C. J., in Boykin v. Smith, supra, has been often cited and quoted:

"True, the witness is not a nominal party to this suit; but the defendant is his grantee, claiming to have derived from him the title which was vested in his father while living. The appellant was claiming to recover an undivided one-eleventh part of the lands, as having descended to him from his father. If the suit was between the appel-

lant and Christopher Boykin, the latter would be within the words of the exception in the statute prohibiting a party from testifying 'to transactions with, or statements by a deceased person, whose estate is interested in the result of the suit.'—Code of 1875, sec. 3058. The purpose of the evidence, and the only result to be reached by it, would be to take away the legal rights of the appellant as heir at law. The policy of the exception is the exclusion of the parties in interest, from testifying to transactions with, or statements by a deceased person, when the purpose of the evidence is to diminish the *rights of the deceased, or of those claiming in succession to him.* * * * If death has sealed the lips of one party, the law intends, as to this species of evidence, to seal the lips of the living. A conveyance with or without warranty, or a transfer of the subject-matter of the suit to another, cannot enable the living party to testify; or the policy of the exception could, at the pleasure of the parties, be defeated." (Italics ours.)

We think it clear that when rights of an heir are at stake or those of his purchaser, and those rights are dependent upon the inheritance, as it existed at the time of the death of decedent, such inheritance (or the estate of deceased) is interested in the suit.

But the question arises of whether the statute bars a witness who is an heir of the estate and proposes to testify in respect to such transaction in the interest of his purchaser, who has succeeded to the interest of the estate.

In the case of McDonald v. Harris, 131 Ala. 359, 31 So. 548, the Court overruled Austin v. Bean, 101 Ala. 133, 137, 16 So. 41, which had held that the statute (section 433, supra) is for the protection of the estate of decedent and those claiming under him, and further that it does not contemplate that the adversary of the estate may object to the competency of a witness called by the representative of the estate to prove a transaction with decedent, and in overruling it held that those interested in the estate could not detail transactions by their deceased ancestor, since the plaintiff's mouth is closed in that respect.

In Adler v. Pin, 80 Ala. 351, it is said the rule of exclusion extends to both the adversary parties. The same principle was applied in Watson v. Appleton, 183 Ala. 514, 62 So. 765, and Qualls v. Monroe County Bank, 229 Ala. 315(3), 156 So. 846.

In some cases, where that question was not involved, it was sometimes said that the statute is for the protection of the estate of decedent, implying it is thought that it is not to protect the living party. But it cannot be used by the representative of the estate of decedent as a club against which the living cannot defend. Since he cannot testify against the estate's representative, the latter should not and cannot testify against the living party. "A party to a contract made with a decedent is not competent to testify thereto as a witness for persons claiming under him as against the heirs of decedent." Barnes v. White, supra. And this protects purchasers under decedent as well as heirs. Jernigan v. Gibbs, supra. The evidence cannot by the terms of statute be used against a party to whom the interest of the witness is opposed, unless called to testify by the one to whom such interest is opposed. Section 433, Title 7, Code. The statute does not say that it cannot be used against the estate of the deceased, but against a party whose interest is opposed to that of the witness. Reference was made to that principle on the basis of those cases in Pfingstl v. Solomon, 240 Ala. 58, 197 So. 12.

It is also observed that section 433, supra, provides that "no person who is an incompetent witness under this section shall make himself competent by transferring his interest to another." But the competency of the witness is dependent upon the nature of the suit and whether the estate of deceased is interested. If the estate is not interested, there is no incompetency under the statute. If the estate is interested, the witness is incompetent if he either has a pecuniary interest in the result of the suit at the time of trial, or if his status is such that he would be so interested if he had not transferred it. Having such interest, and the estate as it existed at the time of the death of Fannie Ruffin being interested, he is incompetent to testify to any transaction with or statement by deceased, "unless he is called to testify thereto by the party to whom such interest is opposed."

■ This principle makes Penton Ruffin an incompetent witness for respondents as to a transaction with or statement by deceased. He was one of her heirs at law who inherited her landed interest. After her death he joined in a warranty deed of this land under which respondent Ford claims. The question at issue in this suit relates to the value of the inheritance at the time of the death of decedent in the hands of a successor to such interest, which makes her estate interested within the meaning of section 433, supra. It is said in Boykin v. Smith, supra, 65 Ala. 294, at page 299, that a conveyance with or without warranty or a transfer of the subject matter to another cannot enable the living party to testify.

In view of this status of the record, the Court is of the opinion that it would be best to remand the case for another trial in accordance with this opinion rather than to render a decree now. The decree of the circuit court is therefore reversed and the cause remanded for another trial.

Reversed and remanded.

LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.

BROWN, J., dissents.

BROWN, Justice (dissenting).

The appellant Niehuss sued J. R. Nettles, doing business as Nettles Lumber Company, at law, claiming damages for cutting timber off of the NW-¼ of SE-¼ and S-½ of SE-¼ of NW-¼ of Section 12, Township 13 North, Range 4 West, in Choctaw County, Alabama, and Nettles filed an answer to the complaint, admitting that he cut pine timber off of said lands of the value of $421.93, which sum he paid into court, suggesting that B. P. Means claimed title to the timber cut and the funds so deposited in court.

Means defaulted in failing to interpose a claim but appellee Ford, Means' son-in-law, by petition for intervention filed October 5, 1944, was allowed to intervene and file claim to the $421.93 on deposit in court. Code of 1940, Tit. 7, § 247. The court on the filing of said petition for intervention ex mero motu, entered an order removing the cause to the equity docket and appellant thereupon filed the bill against Ford and Nettles individually and against Nettles doing business as the Nettles Lumber Company, claiming said fund on deposit in the registry of the court.

The respondent Nettles, individually and for the lumber company, answered, admitting paragraphs one and two of the bill, which are in agreement with the facts above stated; disavowing knowledge as to the merit of the complainant's claim rested on the alleged "instrument", made exhibit to the bill, and then, "Further answering the said Bill of Complaint the respondent, J. R. Nettles, says: that he has heretofore deposited in the Circuit Court of Choctaw County, Alabama, the sum of $421.93, representing the agreed value of the timber cut by him, and he therefore prays that he be dismissed as a party respondent hereto."

On the coming in of this answer the court entered a decree discharging Nettles and the lumber company from liability. The soundness and propriety of this decree is not questioned by the other parties to the suit. This left, as between complainant Niehuss and respondent Ford, the sole controversy, as to which of said parties are ex aequo et bono entitled to the fund on deposit in court. Connecticut General Life Ins. Co. v. Smith, 226 Ala. 142, 145, 145 So. 651; 2 Mayf.Dig. p. 248, §§ 175, 176.

The complainant produced and offered in evidence an undated paper in form a deed, partly printed, partly typewritten and partly written in longhand, which bore the signature of Fannie Ruffin, purporting to convey the timber rights on the land from which Nettles had cut timber in 1943, the proceeds of which were deposited in court. The signature of Fannie Ruffin on said paper was not attested nor was her acknowledgment taken thereto, except by Niehuss, the complainant, and shows on its face glaring alterations. The alterations consist of the erasure and striking from said writing the name of "Mrs. Lula Dempsay", which was written in typewriting immediately after the words "and the said" and immediately before the following words "granted the right of ingress and egress". And in lieu of what was stricken out there

was interlined in longhand "C. W. Niehuss, his heirs or assigns" and by interlining after the words "said land" the words "and other lands owned by grantee". Otherwise stated this part of the deed as originally written was in the following words: "This conveyance includes paperwood and the said Mrs. Lula Dempsay is granted the right of ingress and egress over and across said lands for the purpose of cutting and removing said timber." As altered the conveyance reads: "This conveyance includes paperwood and the said *C. W. Niehuss, his heirs or assigns* granted the right of ingress and egress over and across said lands *and other lands owned by the grantee* for the purpose of cutting and removing said timber * * *." [Italics supplied.]

In answer to interrogatories propounded to him by the defendant signed by his solicitors, who represent him on this appeal, the complainant stated: "I gave Fannie Ruffin approximately fifty or sixty dollars for this timber and paid her for it under the circumstances set out above. The amount was not repaid to me for the reason that the lease transaction was not a loan but was a purchase of the timber by me. * * * The heirs of Fannie Ruffin asked me if I would have the timber cut off the lands in question as quickly as possible and before my timber rights expired. *As a courtesy to them I sold the timber to J. R. Nettles.*" [Italics supplied.]

Over the objection of the defendant that the instrument had not been properly proven and is not properly acknowledged and is an attempt to prove a transaction between a deceased person by a person in interest, the court allowed the complainant to testify that he had the deed recorded. He was then asked, "From the time this paper was first delivered to you by any one, if it was, did you make any alterations of any kind in the instrument prior to the time you had it recorded?" He was allowed to answer over the same objection: "I did not." He was further allowed to testify in respect to said instrument that: "As it now appears, is the way it was when it was first delivered."

On cross examination he was asked if at the time this paper was signed the person whose name was signed to it made a deal with him for $50.00. He answered, "At various times I let her have a little money." He further testified that he did not strike out the name of Mrs. Lula Dempsay and put his name in lieu of it. That the writing in the instrument did not look like his writing. That he didn't know that he had had it in his possession ever since it was delivered to him. He further stated: "Frankly, I don't remember writing this. I may have written it. I would not be positive." He was then asked: "That is your handwriting there?" and answered: "I don't think so. That writing was written after this deed was signed, if I wrote that."

He was then asked, "If this was changed from Mrs. Lula Dempsay you made the change and made it prior to the time she signed it?" The witness did not answer this question. He was then asked: "Who presented you with this deed? A. I don't remember definitely but she signed the deed and turned it over to me. That is her signature. I had it recorded, I guess. I think it is recorded." He was then asked in the course of "your discussion relative to letting her have $50.00, she presented you with this instrument that had Miss Lula Dempsay's name in it?" and answered: "Not to my recollection." He was then asked: "Is or not this the instrument itself that you are stating that you are holding title to this property under? Isn't this the instrument you are depending upon for your success in the law suit?" He answered, "No sir." He was asked: "What are you basing your claim on?" He answered: "I am leaving that to my attorney. I am not basing it on anything now." He was then asked: "Then this instrument has nothing to do with your relation with Fannie Ruffin with regard to the transaction you had with her?" He answered: "Not to my knowledge."

There was evidence in the case going to show that at about the time of said alleged transaction with complainant or immediately prior thereto, Fannie Ruffin had some dealings with Miss Lula Dempsay in procuring money to enable her to pay her taxes on the property and the evidence goes to show that she was an old, ignorant Negro and in necessitous and distressed circum-

stances and was seeking money to pay taxes on the property. The original instrument, adduced by the complainant, is before us. It appears that the alterations in said instrument are in the same handwriting as the handwriting of Niehuss in the acknowledgment thereto, which he admits he took.

As evidence incident to his claim to the money on deposit, defendant Ford, with other evidence, adduced a deed in due form executed and acknowledged by Fannie Ruffin before W. H. Lindsey, Jr., a Notary Public of Choctaw County, signed by "Fannie Ruffin", conveying said timber rights to Mrs. Lula Dempsay, dated the 12th day of November, 1938, which, immediately after the description of the land, contains these words: *"This conveyance includes paper wood. Said Miss Lula* Dempsay is granted the right of ingress and egress over and across said lands for the purpose of cutting and removing said timber." The evidence goes to show said deed was left in the Probate Office of Choctaw County by Penton Ruffin, a nephew of Fannie Ruffin, and that Fannie Ruffin was to get $80.00 on delivery of said deed, the delivery of the deed to the probate office being in escrow, and that Miss Lula Dempsay did not take said deed out of escrow. That the effort of Fannie Ruffin to procure the money was to enable her to redeem said property from tax sale, which had been bought in by Harry Young. After the failure of Miss Dempsay to take the deed out of escrow, Fannie Ruffin applied to Niehuss for an advance of $50.00 to enable her to redeem the property. That her effort to procure the money from Niehuss was about a month later than the date of the deed left in escrow. There was evidence further going to show that when Miss Dempsay failed to take up the deed in escrow, Penton Ruffin obtained it from the probate office and it was turned over to Niehuss when other papers were turned over to him. Penton Ruffin testified: "I carried it to him and told him we could not get the money."

Mr. Scott, counsel for complainant, read in evidence what is referred to as complainant's Exhibit "B", which is as follows:

"Before me, the undersigned authority in and for Choctaw County, Alabama, personally appeared Penton Ruffin, who is known to me, and who, after being by me first duly sworn, says and deposes on his oath, as follows:

"My name is Penton Ruffin. I am sixty years of age. My post-office address is Riderwood, Alabama. Fannie Ruffin was my aunt. She died in the year 1942. At the time of her death she owned approximately 280 acres of land in Choctaw County, Alabama.

"The 280 acres of land above mentioned was originally owned by Harry Ruffin, the father of my aunt, Fannie Ruffin. Harry Ruffin had two children. These children were my aunt, Fannie Ruffin and my aunt, Dicie Ruffin. Dicie Ruffin died in 1927.

"My aunt, Fannie Ruffin, became financially distressed and borrowed some money from Mr. C. W. Neihuss and gave him a mortgage over sixty acres of the above mentioned 280 acres. My aunt, Fannie Ruffin, tried to sell the timber to different parties and pay off this mortgage, but was unable to do so. Later on my aunt, Fannie Ruffin, got some additional money from Mr. Niehuss and she then executed and delivered to Mr. Niehuss a timber deed covering sixty acres of the above mentioned 280 acres. Mr. Niehuss later released the timber on twenty acres of this sixty acres. I was with my aunt, Fannie Ruffin, when she got the money.

"Mr. Oscar Ford is the son-in-law of Mr. B. P. Means. Mr. B. P. Means was the administrator of the estate of my aunt, Fannie Ruffin. Mr. B. P. Means brought his son-in-law, Mr. Oscar Ford, down and they estimated the timber. Mr. Oscar Ford said he would buy the timber. We told Mr. Oscar Ford that Mr. Niehuss owned the timber on one of the forty acres of the 280 tract above mentioned. *We showed him the particular forty, which Mr. Niehuss owned.* Shortly thereafter we met down at the office of Mr. Wallace H. Lindsey for the purpose of making the timber deed. Mr. Lindsey thereupon mentioned that Mr. Niehuss owned the timber off of one of the forties. I did not read the timber deed (to Ford) which Mr. Means had prepared. I signed and delivered the deed, thinking

536

that it did not include the forty acres of land on which Mr. Niehuss owned the timber and both Mr. Ford and Mr. Means knew that we did not claim the timber off of the forty acres on which Mr. Niehuss owned the timber." There was an absence of evidence showing from what part of the land the timber was cut.

Penton Ruffin had testified, without objection, to some of the facts heretofore stated and gave other testimony before any objection to his testimony was made. Complainant's solicitor then made the following objection:

"I want to object to any testimony by Penton Ruffin and move to exclude any testimony by Penton Ruffin with reference to any transaction between the complainant and Fannie Ruffin on the grounds that he is an interested party in these proceedings, being a nephew of Fannie Ruffin and that he has a pecuniary interest in the outcome of this case.

"Judge Pelham: What is his pecuniary interest?

"Mr. Scott: That he has a warranty deed conveying this timber outstanding.

"Judge Pelham: I overrule the motion.

"Mr. Scott: We except. * * * (A colloquy and ruling of the court follow.)

"Q. Was your information that the deed that was signed was changed from two years to five years? A. Yes, sir.

"Mr. Scott: I object to that and move to exclude the answer of the witness.

"Judge Pelham: I overrule the objection.

"Mr. Scott: We except.

"Q. Who reported that to you? A. Penton.

"Q. I will ask you if Penton Ruffin told you he was present when Fannie Ruffin signed that deed to C. W. Niehuss? A. Yes, sir.

"Q. And that she did sign the instrument for a period of two years, but she did not sign an instrument saying five years?

"Mr. Scott: I object to the question. It calls for testimony relating to a transaction wherein Penton Ruffin is personally interested in the outcome of this case. It is irrelevant, incompetent and immaterial.

"Judge Pelham: I overrule the objection.

"Mr. Scott: We except.

"Q. That is true? A. Yes, sir. * * *"

Respondent Ford in his answer claimed the money on deposit under two deeds attached to his answer. The first is a warranty deed executed by B. P. Means, as administrator of Fannie Ruffin and Dicie Ruffin, deceased, joined in and signed by all the heirs of said decedents, conveying the timber rights on the land in controversy to Mrs. W. J. Barber, together with the right of egress and ingress, during a term of five years, to cut and remove said timber. Said deed was duly executed on the 29th of March, 1943, and duly and properly acknowledged by all the grantors before notaries public, duly filed for record on the 20th of September, 1944, in the office of the Judge of Probate of Choctaw County. The second is a deed executed by Mrs. Barber and her husband to Ford, conveying said timber and timber rights and the right of ingress and egress, dated December 1, 1943, duly acknowledged before a notary public and duly recorded in the office of the Judge of Probate on the 11th of March, 1944.

Ford testified, in short that there were 75,000 feet of timber on the land worth from $3.50 to $5.00 per thousand and that he paid therefor the sum of $500.00.

Niehuss, while testifying as a witness in his own behalf, positively disavows that he is claiming the money under the unattested and unacknowledged paper. There is nothing in the record to show that the deceased person, at the time of the transaction, acted in any representative or fiduciary relation to Niehuss, the party against whom the testimony was introduced.

One of the major questions presented by the assignments of error relates to the court's overruling complainant's objection to the testimony of the witness Penton Ruffin. The objection was specific and placed on the ground that Penton Ruffin's interest in the result of the suit was because he joined in said warranty deed to Mrs. Barber, which was outstanding. We are not of opinion that this objection was

well taken. The interest arising from said warranty, at best, was contingent and too remote to affect the competency of the witness.

"Under the common law rule whereby a person interested in a suit is incompetent to testify therein, interest, to disqualify a witness, must be a legal interest in the event of the suit. It must be direct and certain and not contingent or doubtful. * * *" 28 R.C.L. p. 472, § 60; Poe v. Dorrah, 20 Ala. 288, 56 Am.Dec. 196. The objection to the testimony being specific and limited was not tenable and the court cannot be put in error for overruling it. The specific objection waived all others. Alabama Great S. R. Co. v. Bailey, 112 Ala. 167, 20 So. 313; Sharp v. Hall, 86 Ala. 110, 5 So. 497, 11 Am.St.Rep. 28; Orr v. Stewart, 13 Ala.App. 542, 69 So. 649. A party is not incompetent, under this section, to testify unless the case involves a direct immediate conflict between the rights of living persons and the estate of a deceased person. Alabama Gold Life Ins. Co. v. Sledge, 62 Ala. 566. The estate of Fannie Ruffin, under the facts of this case, no matter how it may be decided, is not interested in the result. Holeman v. Quick, 246 Ala. 659, 21 So.2d 839; Kumpe v. Coons, 63 Ala. 448; Darrow v. Darrow, 201 Ala. 477, 78 So. 383; Hodges v. Hodges, 201 Ala. 215, 77 So. 741. Disregarding the fact that the estate of the deceased person must be interested in the result of the suit in Jennings v. Provident Life & Acc. Ins. Co., 246 Ala. 689, 22 So.2d 319, led the court to overrule or modify that decision on the second appeal. Jennings v. Jennings et al., 250 Ala. 130, 33 So.2d 251. And the like failure of the court to observe this essential provision of the statute in some of our cases has led to irreconcilable conflicts and mystification of the law. Code of 1940, Tit. 7, § 433. The decision of the majority in this case is affected wilh that vice.

The theory of Niehuss is that Fannie Ruffin parted with her equitable title to the timber in her lifetime and that it was no part of her estate at her death. Ford relies on a purchase from Mrs. Barber, not a party to the suit, and so no matter who loses or wins this suit, the estate of Fannie Ruffin will not be benefited nor will it suffer detriment.

The two decisions in Howle v. Edwards, the first reported in 97 Ala. 649, 11 So. 748, and the last on second appeal in 113 Ala. 187, 20 So. 956, aptly illustrate when the statutory rule of exclusion should be applied and when not. On the first appeal the court overlooked the fact that the widow was suing under the statute as pro hac vice the representative of the deceased to enforce the right of the deceased to the end that his assets might be realized and the direction given to them which the statute prescribed. On the first appeal it was held that the widow could testify. On the second appeal the fact that the widow sued in her representative capacity as authorized by the statute was developed and the court held in explanation of the former ruling that she was disqualified under the statute because the estate of the husband was interested in the result of the suit.

The interpretation of the court of the opinion in Boykin v. Smith, 65 Ala. 294, indicates that the majority did not understand the effect of that opinion. To illustrate, if Niehuss was suing as an heir at law of Fannie Ruffin, deceased, seeking to recover his inheritance, and was suing Mrs. Barber for the timber or its proceeds, then you would have a true analogy to the facts in the case of Boykin v. Smith, supra. But, as we have shown, that is not the case here and the record discloses that Niehuss transferred his right of property to Nettles, who cut the timber and deposited the money in court. Under no circumstances should Niehuss be allowed in a court of equity to recover any part of the said fund. He does not come into court with clean hands. Under the majority opinion in this case, Niehuss is disqualified to testify as he did in trying to explain the alteration in the deed, which he tacitly admitted he made and unless said alterations are explained satisfactorily to the court by other evidence, said deed should not be received in evidence on another trial.

It is familiar law that if a party is put in possession of land under a deed purporting to convey the land or an interest therein, which is not witnessed or acknowledged and is inefficacious to pass the legal title,

if part of the consideration is paid, a court of equity will treat such deed as a contract to convey and compel specific performance. To warrant such interference, "the agreement must be fair and just in all its parts, and founded upon an adequate consideration; if wanting in either of these essential elements, the court will not interfere." Goodlett v. Hansell, 66 Ala. 151, 156; Gould v. Womack, 2 Ala. 83; Casey v. Holmes, 10 Ala. 776; Roney v. Moss, 74 Ala. 390; Eadie v. Chambers, 9 Cir., 172 F. 73, 24 L.R.A.,N.S., 879, 18 Ann.Cas. 1096. The unattested and unacknowledged paper, upon which complainant's case rests, by reason of its defects, became an executionary contract to convey. Lowery v. May, 213 Ala. 66, 104 So. 5.

"It is a well-established rule that any material alteration in a written instrument, after the execution thereof, made either directly or indirectly by one claiming a benefit under it, without the consent of the party sought to be charged thereon, will render the instrument void as to the latter, even in the hands of an innocent holder, so far as relates to the executory provisions thereof. Such alteration deprives the holder responsible for it of any executory rights or right of action thereon, and, it is generally held, destroys the evidential force and effect of the instrument. * * *" 1. R.C.L., p. 990, § 26; White v. Hass, 32 Ala. 430, 70 Am.Dec. 548; Green v. Snead, 101 Ala. 205, 13 So. 277, 46 Am.St.Rep. 119; Alabama State Land Co. v. Thompson, 104 Ala. 570, 16 So. 440, 53 Am.St.Rep. 80; Brown v. Johnson, 127 Ala. 292, 28 So. 579, 51 L.R.A. 403, 85 Am.St.Rep 134.

Code of 1940, Tit. 47, § 95, provides as follows:

"All deeds, mortgages, deeds of trust, bills of sale, contracts or other documents purporting to convey any right, title, easement, or interest in any real estate or personal property, and all assignments of mortgages, deeds of trust or other securities for debt or extension agreements with respect thereto, when executed in accordance with law, shall be admitted to record in the office of the probate judge of any county. Their filing for registration shall constitute notice of their contents.

"This section shall not be construed as superseding or repealing any other laws effective in Alabama relative to the subject matter herein, but shall be held and construed to be cumulative."

I am unable to agree that the words *"when executed in accordance with law"* as applied to deeds, in the above quoted statute, mean nothing more than that they must be in writing and signed. This language means they must be witnessed by two witnesses, who can write, or acknowledged before an officer authorized to take and certify acknowledgements, before they are entitled to registration. There is a marked distinction between the execution of a deed and the signature to or the signing of a deed. *"Executed in accordance with law"* not only means duly attested and acknowledged, but delivered.

Section 109 of said Title 47, Code of 1940, provides: *"Conveyance to be proved or acknowledged in order to obtain benefit of registration.*—All conveyances admitted to record on proof must be attested by two witnesses, and the proof or acknowledgment must comply substantially with the foregoing forms, or the conveyances lose the privilege conferred by section 104 of this title."

It would require a stretch of the imagination to assume that the legislature in the enactment of the statute (Acts of 1927, p. 496, now Code of 1940, Tit. 47, § 95), in the use of the language *"executed in accordance with law"* had reference to the statute of frauds. The purpose of the statute of frauds is to prevent fraud. It does not deal with the execution of deeds but prescribes a rule of evidence as to the proof of the existence of instruments within its influence and prevents proof of such deeds or contracts for the sale of lands, except in a limited class, by parol testimony. Horton v. Wollner, 71 Ala. 452, 453, 456; Knox v. King, 36 Ala. 367; Butler Cotton Oil Co. v. Millican, 216 Ala. 472, 113 So. 529; Bunch v. Garner, 208 Ala. 271, 94 So. 114.

In view of the fact that the trial was had on testimony given ore tenus, the equivocal nature of the complainant's testimony as to the dealings with the deceased Fannie Ruffin, complainant's tacit

admission that he altered the instrument after its execution, his admission that he took the acknowledgment and his inability to explain such alterations coupled with the evidence showing inadequacy of consideration, the decree rendered was most generous to appellant in allowing him $80 out of the proceeds. In the absence of cross-assignments of error, the decree should not be reversed. I, therefore, respectfully dissent and in substance, adopting the language of Chief Justice Charles Evans Hughes, dedicate this dissent "to the future enlightened conscience of the law."