119 So.2d 226

**John DAVENPORT et al.**

v.

**Pearlie O'NEAL, as Executrix.**

**5 Div. 658.**

Supreme Court of Alabama.

March 24, 1960.

Lewis H. Hamner, Jr., Roanoke, for appellants.

Paul J. Hooton, Roanoke, for appellee.

STAKELY, Justice.

This suit was instituted by John Davenport and others against J. I. O'Neal for damages for trespass to certain described lands comprising fifty-five acres lying in Randolph County, Alabama, and for the tearing down and moving from these lands a five room dwelling house on the lands on or about the 6th or 7th of June, 1954.

After the demurrers to the complaint were overruled the defendant filed pleas of the general issue.

Before the trial of the case the defendant, J. I. O'Neal, died and the cause was revived against Pearlie O'Neal, as executrix of the last will and testament of J. I. O'Neal, deceased. The cause was tried orally before the court without the intervention of a jury. At the conclusion of the evidence the court entered a judgment for the defendant. This appeal followed.

This case was originally assigned to another Justice of this court but has recently been reassigned to the writer.

There was evidence tending to show that John Davenport, Sr., an ancestor of all the plaintiffs who are his children and children of deceased children, bought the fifty-five acres in question from the Marbury Lumber Company, paid part of the purchase price and went into possession of the land in about 1912 or 1913. No deed from the Marbury Lumber Company to John Davenport was introduced in evidence or claimed to exist but there was introduced in evidence a letter dated September 15, 1921, from the Marbury Lumber Company, showing the balance of John Davenport's account with them on the land in question, which, according to the letter, he purchased from them. There was also introduced in evidence five notes, each for $108.66, from John Davenport to Marbury Lumber Company. The note due on November 15, 1918, is marked "Paid (11/19/18)." The note due November 15, 1917, has on the back thereof 12/8/17 By Cash $110, and 1/13/17 Bal. due to date $16.72. On the notes due November 15, 1919, November 15, 1920 and November 15, 1921, there is no notation of payment. But on the back of each of these last three notes, there is the notation, Marbury Lumber Co., by D. H. Marbury, Prest.

The evidence further tended to show that John I. Davenport built the house on the fifty-five acres in question about 1914

and lived there with his family until he died in December, 1919; that thereafter Walter Davenport, the oldest son, took charge of the place and lived there with his wife and family and his brothers and sisters until he died in January, 1954; that since the death of Walter Davenport, John Davenport, another son and one of the plaintiffs, has been looking after the place; that John Davenport and his heirs have been in continuous, notorious, exclusive, adverse possession of the property from about 1912 or 1913 to the date of the trial.

A considerable amount of testimony was introduced by the plaintiffs tending to show acts or indicia of ownership by the Davenports, such as building and living in the house, repairing the house, cultivating the land, cutting timber on the land, raising livestock and chickens. This testimony came not only from members of the Davenport family but from witnesses in the general community, who testified that the property was generally known as the Davenport property in the community.

There is no proof that the original John Davenport ever paid any taxes on the fifty-five acres. However the last John Davenport says taxes were paid on this land. There is no proof, however, of any assessment of taxes. The testimony of John Davenport as to the payment of taxes is vague and indefinite. We set out some of the questions and answers of the testimony of the last John Davenport in this respect:

"Q. And if Walter hadn't paid taxes on this 55 acres, you didn't pay it, did you? A. I thought he was. That is what he said he was paying, paying taxes on the house.

"Q. I know but I am asking you about this 55 acres? A. Well, I just said he had been paying taxes on all the land.

"Q. You don't know whether he had been paying on the 55 acres or not, do you? A. No, I don't. He said he was paying on all the land."

The foregoing testimony was obviously introduced to establish the plaintiff's ownership of the land and the house at the time of the alleged trespass.

The defense of the defendant was that her testator, J. I. O'Neal, had the right to go upon the land and remove the house in question, having acquired that right from C. C. Twilley, the record title holder.

The defendant introduced evidence showing a perfect record title from the Marbury Lumber Company and its successors in interest to the defendant, J. I. O'Neal. There was testimony introduced by the defendant to which we shall later refer, tending to show that the fifty-five acre tract was held permissively by the Davenports and not adversely to J. I. O'Neal and his predecessors in interest.

The testimony of the plaintiff showed that the Davenports in addition to the fifty-five acres also owned an adjoining tract of land of about forty acres and also an adjoining tract of about thirty-three acres. The house was removed by the boys of J. I. O'Neal, acting under his direction. At the time it was removed the house was vacant.

The principal basis on which the appellants seek a reversal of the judgment of the lower court is that the defendant in attempting to show a permissive use of the fifty-five acres, was allowed to introduce testimony contrary to the so-called dead man's statute, § 433, Title 7, Code of 1940.

Walter Davenport died in 1954. The defendant undertook to show that Walter Davenport rented the property from Henry C. Windsor in 1923 and 1924, from J. I. O'Neal in 1930 and from C. C. Twilley in 1946. At these times, respectively, each of these parties were the record title owners of the fifty-five acre tract. The defendant identified a note dated November 15, 1930, for $65 allegedly signed by Walter Daven-

port and on which she was a witness and testified without objection that it was for rent on the fifty-five acres in 1930. Later the witness, over the objection of the plaintiff, testified that the note dated January 15, 1930, was a rent note for the fifty-five acres in question. We find no error in this ruling. The witness had already testified without objection that it was for rent on the fifty-five acres in 1930. It may be added that immediately after the foregoing testimony a question was asked, "Did Walter Davenport ever pay you any rent on this place, you in person?" The attorney for the defendant stated that the testimony will show that in 1946 Walter Davenport paid her rent on two occasions for the house on the fifty-five acres of land. The court sustained the objection to this question.

The testimony shows that shortly after 1921 and in 1922, Henry C. Windsor had the record title to the land under a deed from the Marbury Lumber Company. Henry Windsor over the objection of the plaintiff was allowed to testify that Walter Davenport paid rent to him for the fifty-five acre tract. While he purchased the property in 1922, he sold the property in 1924, and at the time of the trespass, and at the time of the trial, he certainly had no interest in the house in question.

■ It is true that Walter Davenport was dead. Walter Davenport as we have stated died in 1954. Henry C. Windsor does not claim in any way under Walter Davenport or any Davenport for that matter and is in no way in privity with Walter Davenport or any other Davenport. Accordingly, such cases as Boykin v. Smith, 65 Ala. 294; Niehuss v. Ford, 251 Ala. 529, 38 So.2d 484, and Haywood v. Hollingsworth, 255 Ala. 453, 51 So.2d 674, cited by appellants, have no application in this case. The same situation may be said to exist with reference to the testimony of C. C. Twilley, who bought the property in 1946 and who claims to be the present owner of the fifty-five acres of land. C. C. Twilley does not claim title through Walter Daven-

port or any Davenport and is not in any way in privity with either of them. According to his testimony, Walter Davenport lived in the house which was supposed to have been built on another forty acre tract adjoining the fifty-five acres in order to get to a spring located there. According to his testimony Walter Davenport rented the house from him for $25 per year.

The testimony of the defendant is to the effect that the Marbury Lumber Company made a deed to the fifty-five acres to Henry C. Windsor. This deed was introduced in evidence. Henry C. Windsor made a deed to one Hugh Malone, which was introduced in evidence. Hugh Malone made a deed to J. I. O'Neal. J. I. O'Neal made a deed to Pierce D. O'Neal. Proceedings were introduced showing that the court ordered the deed made by the Guardian of Pierce D. O'Neal to Pearl Lee O'Neal, Pierce D. O'Neal at the time being a non compos mentis.

Pearl Lee O'Neal joined with her husband in selling the lands to C. C. Twilley. C. C. Twilley who claims to be the present owner of the lands under a record title, made a quitclaim deed to J. I. O'Neal, now deceased, to the house on the land described in these proceedings. This house is the subject matter of the present suit. The record shows that title to the house is in the deceased, J. I. O'Neal.

■ There are certain legal propositions which should be kept in mind. When possession of land is in dispute, he who has the legal title is deemed to be in possession and the other is a trespasser. § 86, Title 7, Code of 1940.

Section 433, Title 7, Code of 1940, reads as follows:

"In civil suits and proceedings, there must be no exclusion of any witness because he is a party, or interested in the issue tried, except that no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his

**440**

interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding, * * *."

It cannot be said that either the witness Windsor or the witness Twilley had any interest in the land when they testified because Henry C. Windsor had conveyed his interest to Hugh Malone and C. C. Twilley had no interest in the house because he had conveyed the house to J. I. O'Neal. When they testified neither one had any interest in the subject matter of the suit. 70 C.J., § 322, p. 256; 97 C.J.S. Witnesses § 126, p. 548.

As throwing light on the present controversy, testimony tends to show that the Marbury Lumber Company made a contract to sell to John Davenport the fifty-five acres of land. Being the owner of adjoining tracts of land, John Davenport built a house near the line between these two tracts. It was so built as to be accessible to a large spring. It so happened that the house was built on the fifty-five acre tract. According to the testimony, between 1915 and 1922 John Davenport having made payment of two of the notes, it is argued that he gave up the contract for the fifty-five acres and was returned his five notes. At any rate, shortly after 1921 and in 1922, the Marbury Lumber Company sold the fifty-five acre tract and made a warranty deed thereto to Henry C. Windsor.

The testimony at times appears to be somewhat confusing but at any rate, the court heard the testimony orally and heard the witnesses testify before him and we cannot say that his judgment was palpably wrong. Accordingly, we think that the judgment of the lower court should be affirmed.

Affirmed.

SIMPSON, GOODWYN and MERRILL, JJ., concur.