288 So.2d 435

Wilta June WALLING

v.

J. B. COUCH.

SC 383.

Supreme Court of Alabama.

Dec. 13, 1973.

Rehearing Denied Jan. 24, 1974.

Harris, Harris, Shinn & Harris, Decatur (on appeal only), for appellant.

Sherman B. Powell, Decatur, for appellee.

**PER CURIAM.**

As the facts of this cause are fully stated in the trial court's order set forth in the dissent of Mr. Justice Jones, it is unnecessary to repeat them here.

The principal issue on this appeal is whether the Dead Man's Statute, Title 7, § 433, Code of Alabama, as last amended, applies to protect those claiming through a deceased person by virtue of an inter vivos transaction. We hold that it does and reverse and remand the decree of the trial court in this cause.

In considering our case law on this point, we find there are two conflicting lines of cases. As noted in the dissent, the cases of Jennings v. Jennings, 250 Ala. 130, 33 So.2d 251 (1948) and Nelson v. Howison, 122 Ala. 573, 25 So. 211 (1899), stand for the proposition that the Dead

Man's Statute does not protect one who succeeds to the rights of a decedent by a transaction effective during the decedent's lifetime. Additionally, the cases of Goodgame v. Dawson, 242 Ala. 499, 7 So.2d 77 (1942) and Jennings v. Provident Life & Accident Ins. Co., 246 Ala. 689, 22 So.2d 319 (1945), state, in dicta, the same proposition. According to Shepard's Alabama Citations, neither of the *Jennings* cases has ever been cited while the *Nelson* case has been cited only three times. The dicta in *Goodgame* has been cited three times also.

Contrary to the *Jennings* and *Nelson* cases, there is an established line of our decisions which holds that the Dead Man's Statute does apply to those who succeed to the rights of a decedent by an inter vivos transaction. Among these cases are Federal Land Bank of New Orleans v. Curington, 233 Ala. 263, 171 So. 361 (1936); Smith v. Cook, 220 Ala. 338, 124 So. 898 (1929); Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115 (1950) (a leading case in the field); and, McCulloch v. Roberts, 290 Ala. 303, 276 So.2d 425 (1973), our most recent pronouncement on this subject. The last four mentioned cases have been relied upon and cited as authority for this proposition of law twenty-one times according to Shepard's Alabama Citations.

This latter line of cases appears to represent the clear weight of authority in this state on this subject. Moreover, we are convinced that these cases state the sounder position. The policy objective underlying the Dead Man's Statute is to prevent testimony by living witnesses as to transactions with a person who is no longer alive to contradict such testimony. This policy applies equally as well to the inter vivos transaction as to the devise and descent situations.

■ As applied to the instant case, we hold that the Dead Man's Statute rendered incompetent all testimony by complainant, J. B. Couch, concerning conversations between himself and his deceased wife respecting an alleged agreement.

■ It appears from the record that the alleged agreement (the foundation for an alleged constructive trust) between J. B. Couch and Juliette Couch was first introduced on the direct examination of J. B. Couch. The rule in Alabama is that the cross-examination of a witness upon a matter brought out by the other side does not waive the incompetency or make competent the evidence offered. Milton Realty Co. v. Wilson, 214 Ala. 143, 107 So. 92 (1926). The incompetency of J. B. Couch to testify as to conversations with his deceased wife during her lifetime was not waived by appellant's cross-examination of Mr. Couch with regard to those conversations. [Parenthetically, we note this cause was tried under the provisions of Title 7, § 372(1), Code of Alabama, Recompiled 1958].

It is thus that we conclude the trial court erred in permitting J. B. Couch to testify concerning conversations with his now deceased wife. And, in light of the fact that Couch's incompetent testimony constitutes the only evidence having any tendency to establish the alleged agreement (made the basis for a constructive trust), we need not reach the other contentions presented by the parties on this appeal.

Reversed and remanded.

MERRILL, COLEMAN, BLOODWORTH, MADDOX and McCALL, JJ., concur.

HARWOOD, FAULKNER and JONES, JJ., dissent.

HEFLIN, C. J., not sitting.

JONES, Justice (dissenting).

Argued assignments of error other than those raising the Dead Man's Statute go to the weight of the evidence to support the chancellor's decree finding a constructive trust. Concededly, were the testimony of J. B. Couch ruled incompetent as violative of the Dead Man's Statute, the appellants' contentions would prevail. My only point of disagreement with the majority opinion

relates to admissibility vel non of Couch's testimony.

This is an appeal by Wilta June Walling and Arthur E. Walling from a final decree in favor of J. B. Couch involving a suit by J. B. Couch against the Wallings and Central Plaza Bank and Trust Company, Executor of the will of the complainant's wife, Juliette Logan Blow Couch, to establish and enforce a trust to the extent of $10,000 in the Wallings' indebtedness to Mrs. Couch.

The indebtedness, evidenced by a promissory note and secured by a mortgage on real estate described in the Bill of Complaint, was the unpaid balance of the purchase price of this real estate which was sold by Mrs. Couch to the Wallings on August 31, 1970. The purchase price was $27,000. The original indebtedness, after a down payment of $4,050, was $22,950, bearing interest at 8% per annum and was payable in monthly installments of $100 until September 5, 1972, at which time the total principal balance was payable.

The Couches were married in November, 1964, at which time she had a substantial amount of cash, and he owned approximately 80 acres of farm land in Morgan County, Alabama, which was subject to an indebtedness of $2,000.

Couch alleges that shortly after their marriage, he and Mrs. Couch entered into an oral agreement with each other whereby he would convey fee simple title in said farm land to his wife, who would pay for the construction of a home on said farm land. He stated that they agreed that his interest in said property was $10,000; that Mrs. Couch would pay for all improvements to the property; that in the event the property was sold during the lifetime of the parties, he would receive $10,000 from the consideration paid for the property; and that, to protect his interest for conveying title to Mrs. Couch, they discussed the execution of joint wills consummating the agreement and protecting each of the parties.

On December 8, 1964, the Couches executed wills, each leaving their respective estates to the other.

On April 16, 1965, Couch executed a deed vesting title to the property in himself and his wife as joint tenants with right of survivorship.

In November, 1965, the construction of the aforementioned home was completed at a cost of $11,500.

On March 3, 1966, Couch executed a deed conveying to his wife all of his interest in said property.

Couch stated that he did not pay any of the construction costs on said house; however, he stated that he paid between $4,000 and $5,000 for such improvements as a barn, fences, and clearing the land.

During the fall of 1969, the Couches separated and were divorced. They remained separated for two months during which time Mrs. Couch revoked her will. The Couches then remarried and on December 12, 1969, Mrs. Couch made another will leaving all of her property to her husband.

Sometime after November, 1964, and prior to the sale of said realty to the Wallings, Mrs. Couch paid the $2,000 that the appellee owed on the property; however, Couch alleged and testified that he repaid the $2,000 to his wife.

On August 31, 1970, Mrs. Couch (joined by her husband) sold the real estate to the Wallings.

In September, 1970, the Couches moved to St. Petersburg, Florida. In November, 1970, following an argument with his wife, Mr. Couch returned to Alabama. He stated that he subsequently attempted to visit his wife in Florida but that Mrs. Couch's sisters would not let him in the house to see her.

On November 23, 1970, Mrs. Couch executed a will in Florida leaving all of her property to her sisters and naming Central Plaza Bank and Trust Company as her executor. Couch had no knowledge of this will until after his wife died, which occurred in Florida on February 26, 1971.

The Wallings, appellants, received service of the current suit on July 20, 1971. Subsequently, they paid the unpaid balance on the real estate indebtedness to Mrs. Couch's executor, Central.

At the trial, Ann Thompson, Margie Patterson, Farrell Couch, and Emmett Couch, all witnesses for Couch, testified to conversations with Mrs. Couch. Each of said witnesses testified that Mrs. Couch said if she (Mrs. Couch) were living when the Wallings paid the indebtedness on the property, Mr. Couch would get his share. However, they all testified that Mrs. Couch never mentioned the specific amount that Mr. Couch was to receive. They also stated that Mrs. Couch said if she died first, Mr. Couch would get the property (or the money) and if he died first, she would get the property (or the money).

We set forth in haec verba the decree issued by the Honorable Newton B. Powell, Circuit Judge of Morgan County:

"This cause coming on to be further heard is submitted in open court after oral hearing of the evidence for final decree on the pleadings and proof. The decree of May 3, 1972, sustaining demurrer to the plea in abatement of Central Plaza Bank & Trust Company states the facts with the additional statement herein, and this will not be repeated. Pending this suit, and after all respondents had been served with process and a copy of the bill of complaint and had appeared personally in open court at one or more hearings in this proceedings, the respondents, Wallings, paid to the respondent, Central Plaza Bank, the unpaid balance of the purchase price on the real estate. The money was not placed in the jurisdiction of the Court, and the respondent, Central Plaza Bank, contends that the Court does not have jursdiction over it since it is a foreign corporation not doing business in Alabama. It will be noted that the bill of complaint prays for general relief.

"The Court finds that the complainant, J. B. Couch, and his wife, Juliette Couch, entered into an oral agreement as stated in the statements of facts in the decree of May 3, 1972, herein with reference to the real estate and the purchase price to be received therefrom. This was unenforceable as a mere agreement, but as a part of a fraudulent scheme it requires more consideration which will be noted below. It is recognized that Title 20, Section 3(6), Code of 1940 prohibits an oral agreement to make a will, and that Title 47, Section 147, Code of 1940 prohibits an oral trust in lands. These sections of the Code deal with oral agreements as such; they do not prohibit an oral agreement from being a part of a fraudulent scheme. This issue will be considered. The agreement between J. B. Couch and Juliette Couch serves as a background for the contention that a constructive trust developed not only as to the proceeds of the sale, but also as to the mortage lien and the legal title to the real estate which was held by Juliette L. Couch at the time in question. A constructive trust is one which is created by operation of law by reason of a fraud or some other sharp practice. In such cases equity imposes a constructive trust on the subject property as long as it is not in the hands of an innocent purchaser. When it falls into the hands of an innocent purchaser without notice, a like trust is imposed upon the purchase price, or any other new form into which the property has been converted. Pomeroy's Equity Jurisprudence, 4th Edition, Section 1051; Hutchinson et al. v. National Bank of Commerce, 145 Ala. 196, 41 So. 143; Ex parte Knowles v. Canant, 255 Ala. 331, 51 So.2d 355. A constructive trust is a device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. Putnam v. Putnam, 274 Ala. 472, 150 So.2d 209.

"Time marriage of the complainant and Juliette L. Couch created between them a relationship of confidence and trust exacting the utmost good faith in their dealings with each other. Putnam v. Putnam, supra. The Statute of Frauds applies to agreements; it does not apply to prohibit

relief based on fraud, though a part of the fraud may be an agreement. But, since the crux of the rights of the complainant as determined by the Court is not the validity of the agreement between the husband and wife, it is not necessary that the agreement be a strictly legal one in order to furnish an equitable right. The Court finds that Juliette Couch practiced legal fraud on her husband, J. B. Couch, beyond and in addition to the breach of the agreement. When she repudiated the agreement between herself and her husband by the cancellation of the will made in pursuance of the contract, she not only breached the agreement, but also furnished the final phase of the evidence of a fraud against her husband which started with her obtaining the deed to the land and her husband's $10,000 interest in the same by means of a fraudulent scheme. The Court further finds that her promise to restore the $10,000 which her husband had invested in the land was made with no intentions of performing the same. It was this dereliction of duty on the part of Juliette L. Couch that is the basis of the complainant's right and not the original oral agreement nor the mere breach of the oral argument. Pomeroy's Equity Jurisprudence, 4th Edition, Volume 3, Section 1055(2). This being a constructive trust which comes into being by operation of law under certain conditions, the statute of frauds does not apply to it. Pomeroy's Equity Jurisprudence, 4th Edition, Volume 3, Section 1040. If the statute of fraud applied in such cases, it would be necessary for the guilty party to record his fraud in writing and sign the same before such trust could be created. Obviously there were never any intentions of applying the statute of frauds to such cases. The case of Putnam v. Putnam, supra, is an example of the cases in which our courts have recognized the theory of constructive trust in dealings between husband and wives in order to protect the interests of the parties. The simplest form of the constructive trust is the case in which one furnishes the purchase money and another takes title to real estate in

himself or another contrary to the understanding between parties. This is by no means the entire field of operation of constructive trusts. Pomeroy has said:

"'This notion of fraud enters into the conception in all its possible degrees. Certain species of the constructive trust arise from actual fraud; many others spring from the violation of some positive fiduciary obligations; in all the remaining instances there is, latent perhaps, but nonetheless real, the necessary element of that unconscientious conduct which equity calls constructive fraud.' Pomeroy's Equity Jurisprudence, 4th Edition, Volume 3, Section 1044.

"It follows that as between J. B. Couch and his wife, Juliette L. Couch, a constructive trust of all interest held by her in the real estate in question and the proceeds therefrom came into being to secure J. B. Couch's interest to the $10,000 in and to said real estate, because of the circumstances as stated above. This constructive trust was created between the parties, and the respondent, Central Plaza Bank, etc., stands in the shoes of Juliette Couch.

"In addition to the case of fraud made by the complainant, the Court finds that the agreement of J. B. Couch and Juliette Couch to make mutual wills, based upon a consideration and executed by the making of the wills, was valid. Here as in Larkins v. Howard, 252 Ala. 9, 39 So.2d 224, the enforcement of rights under executed agreements to make a will is not within the Statute of Frauds, and though a will is testamentary in frame and verbage, and as such oral agreements to make a will is void, it is also a contract. When based upon a valuable consideration, a paper in form of a will may constitute an irrevocable contract. Under such state of facts the parties obtain contractual rights in the property.

"It is noted that if the 'Dead Man's Statute' ever had any application to the proof of the agreement between J. B. Couch and Juliette Couch it was eliminated as between J. B. Couch and the Wallings

when the Wallings on cross examination of J. B. Couch brought out the agreement.

"Since Central Plaza Bank is beyond the jurisdiction of the Court, the question of judgment against or in favor of the respondent, Central Plaza Bank, on the merits is not considered. The amendment to the answer of Central Plaza Bank to the effect that pendente lite the Wallings paid in full their mortgage debt, and that their lien on the subject property has been extinguished is significant. The effect is to remove from the jurisdiction of the Court pendente lite the res of the litigation as between the complainant and Central Plaza Bank. The Court holds that the purchase money and respondent, Central Plaza Bank, are now beyond the jurisdiction of the Court; the Court is left to deal with the parties and subject matter remaining within its jurisdiction.

"At the time of the acts on the part of Juliette L. Couch which brought into being the constructive trust, she obtained the legal title to the real estate in question. The same is true as to contract. This legal title to the real estate was held subject to the constructive trust on the same created by the acts set forth above and subject to the contract. The respondents, Walling, now hold this interest in the real estate which was subject to the constructive trust and contract unless the complainant's rights have been eliminated by some operation of law or acts of the complainant. If the Wallings took this title at the time they extinguished the mortgage debt as innocent purchasers, they hold it free of all encumbrances material to this case. One is an innocent purchaser and entitled to protection as such when (1) he is the purchaser of the legal as distinguished from an equitable title; (2) he purchases the same in good faith; (3) he parts with value as a consideration therefor by paying money or other thing of value, assuming a liability or incurring an injury; (4) he has no notice, and knows no fact sufficient to put him on inquiry as to complainant's equity, either at the time of his purchase, or at or before the time he pays the purchase money, or otherwise parts with such value. All of these conditions must concur. Larkins v. Howard, 252 Ala. 9, 39 So.2d 24; Orso v. Cater, 272 Ala. 657, 133 So.2d 864. 'He not only must have purchased in good faith . . ., but he must have had no knowledge or notice of prior rights at the time of his purchase or at any time prior to payment of the purchase-price . . .' Thompson on Real Property, Volume 8, Section 4287, cited in Holgerson v. Gard, 257 Ala. 579, 60 So.2d 427. At the time the Wallings paid the balance of the purchase price to Central Plaza Bank, they had actual notice of the claim of J. B. Couch. They had been made parties to this suit; one had appeared in open court on at least one occasion for proceedings in this suit. With this knowledge they paid the balance of the purchase price to the respondent, Central Plaza Bank. They are, therefore, not innocent purchasers, having parted with their money after notice of the claim. They, therefore, hold all title and interest in and to said real estate which they acquired from Central Plaza Bank as the representative of Juliette L. Couch, subject to the constructive trust and the contract to the extent of $10,000 in favor of J. B. Couch, unless by signing the deed with Juliette Couch to the Wallings, J. B. Couch is estopped to assert his rights. One is not in a position in equity to claim estoppel in the absence of some change of position to his detriment when he has notice of a fraud which induced the husband of his grantor to join as his grantor in a conveyance before the purchase price is paid. Such is the case here. The respondents, Wallings, could have protected themselves by interpleading the purchase price or seeking directions from the Court as to what course to pursue after being made parties to this suit. This they were not required to do, but they assumed the risk of failing to do so by paying the purchase price with full knowledge of the complainant's claim. The Court is of the opinion that the complainant is not estopped to assert his claim.

"It is, THEREFORE, ORDERED, ADJUDGED AND DECREED that a lien on the subject real estate is hereby established in favor of the complainant, J. B. Couch, to the extent of $10,000. The said lien of J. B. Couch on said real estate may be extinguished by any one by the payment to the Register of this Court within sixty days from the date of the filing of this decree the sum of $10,000, which sum if paid will be forthwith paid to the said J. B. Couch or his solicitor of record. Upon the payment of said sum and the costs of this proceeding, all rights of the said J. B. Couch will be extinguished in and to said lands.

"Upon the failure of anyone to make such payment, the Register of this Court is hereby ordered and directed to sell the real estate at public outcry at the Courthouse door of this county during the legal hours of sale on April 10, 1973. Before making such sale, the Register will advertise the same in a newspaper of general circulation in Morgan County for three times on three successive weeks prior to said sale. At the time of the sale she will offer the same to the highest and best bidder for cash; she will sell the same, and receive the purchase price. She will report the same to the Court in writing. Her report will lie on file for one day during which time any party to this suit may file objections and exceptions thereto. At the end of said time, the Register will deliver the file of this case, together with all objections and exceptions to her report, to the undersigned Judge of said Court for further action herein.

"Because of matters occurring pendente lite, IT IS HEREBY FURTHER ORDERED AND DECREED that this Court does not have jurisdiction over the respondent, Central Plaza Bank and Trust Company, a Corporation. No rights of said respondent are adjudicated, and nothing herein shall be construed as an adjudication of any rights or interest of the said Central Plaza Bank and Trust Company, a Corporation, as executor of the estate of Juliette Logan Blow Couch, or in any other capacity. Likewise, nothing herein contained shall be construed as adjudicating the rights of any parties to this suit or any other persons in relation to the said Central Plaza Bank and Trust Company, a Corporation, on any of the issues of this suit. The said Central Plaza Bank and Trust Company, a Corporation, is hereby discharged.

"[Legal description of subject real estate.]

"The Court retains jurisdiction of this cause for such other orders and proceedings herein as may seem proper and just.

"This the 9th day of January, 1973.

s/ Newton B. Powell
Circuit Judge"

The primary issues to be considered on this appeal are raised in the appellants' contention that Couch was incompetent to testify relative to a transaction with Couch's deceased wife.

The appellants (Wallings) contend that the Dead Man's Statute, Title 7, § 433, Code of Alabama 1940, as amended, applies to protect those claiming in succession to a deceased person just as it does to the estate of the deceased and excludes testimony of the living party as to a transaction between him and the deceased, where his testimony adversely affects the interest of a grantee of the deceased. In addition, they contend that cross examination of an incompetent witness in reference to matters brought out on direct examination does not waive his incompetency.

The chancellor, in holding that J. B. Couch was competent to testify as to the agreement with his wife, stated as follows:

". . . if the 'Dead Man's Statute' ever had any application to the proof of the agreement between J. B. Couch and Juliette Couch it was eliminated as between J. B. Couch and the Wallings when the Wallings on cross examination

of J. B. Couch brought out the agreement."

The appellants rely on Milton Realty Co. v. Wilson, 214 Ala. 143, 107 So. 92, for the proposition that the rule in Alabama is that cross examination of an incompetent witness upon a matter brought out by the other side does not waive the incompetency or make competent the evidence offered. The *Milton* case, supra, also held no objection to the evidence was required by the statute. These are correct statements of the law in Alabama. The appellants are also correct in their contention that the agreement between J. B. Couch and Juliette Couch was first introduced on the direct examination of J. B. Couch.

Nevertheless, I would hold that the circuit court was correct in holding that J. B. Couch's testimony was competent and that it did not come within the exclusion set out in Title 7, § 433, Code of Alabama 1940 (recomp. 1958).

The contention that J. B. Couch was incompetent to testify to the agreement with his deceased wife can be summarized by considering Federal Land Bank of New Orleans v. Curington, 233 Ala. 263, 171 So. 361 (1936). In that case, this Court held that the spirit of the Alabama Dead Man's Statute prohibits the testimony of the living party to a transaction with the deceased against the party to whom his interest is opposed, when the deceased person's estate, or that of his grantee or heir, is interested in the result of the suit. The Court also held that the rule applies to protect those claiming in succession to the deceased, the same as the estate of the deceased, when the other conditions exist.

That argument raises the issue of whether or not the Alabama Dead Man's Statute can silence one party, a survivor to a real estate agreement, as to testimony considered by an equity court in creating a fraud rectifying constructive trust in order to protect the other party who claimed title through the deceased by a separate inter vivos transfer and where the estate or a successor thereto, is not interested in the results of a proceedings. Are the appellants such successors or grantees as are contemplated by the Dead Man's Statute and the case law interpreting such statute?

The Alabama Dead Man's Statute does protect heirs and others claiming in succession, Goodgame v. Dawson, 242 Ala. 499, 7 So.2d 77 (1942), or privity, Niehuss v. Ford, 251 Ala. 529, 38 So.2d 484, to the deceased, but it does not exclude testimony offered against one who took from the deceased through an inter vivos transaction. In Jennings v. Jennings, 250 Ala. 130, 33 So.2d 251, this Court held as follows:

" . . . the statute inhibiting the testimony of parties does not apply 'where the evidence is offered against one who succeeded to the rights of decedent by a transaction effective during his life. Goodgame v. Dawson, supra [242 Ala. 499, 7 So.2d 77]; Nelson v. Howison, 122 Ala. 573, 25 So. 211.' "

The words "succession", "successor", etc., when used in the context of the exclusionary rule in the Dead Man's Statute, do not refer to inter vivos transactions. They contemplate the acquisition of rights upon the death of another.

The appellants rely primarily on three cases: Hodges v. Denny, 86 Ala. 226, 5 So. 492 (1889); Federal Land Bank of New Orleans v. Curington, supra; Smith v. Cook, 220 Ala. 338, 124 So. 898 (1929).

*Hodges* is not in point. That case involved a suit by a transferee of a promissory note against the personal representative of the maker. Justice Clopton, speaking for the Court, held that the transferrer was not a competent witness, on the part of the transferee as to any transaction with the deceased. The case restated the rule that the statute excludes the living from testifying to any transaction between himself and the dead, where the effect of the evidence is to diminish the rights of the deceased or those claiming under him.

However, in the case at bar, there is no contention that the estate is interested nor are the Wallings successors; and, accordingly, *Hodges* is not applicable.

The other two cases relied on by the appellants appear to be in conflict with the inter vivos transaction rule as set out in the *Jennings* case, supra.

In Federal Land Bank of New Orleans v. Curington, supra, Justice Foster, speaking for the Alabama Supreme Court, excluded the testimony of the complainant relating to an inter vivos transaction with her husband. Neither the estate nor a successor thereto was interested in the results of the suit. However, the case has been cited as authority for the proposition that the Dead Man's Statute's exclusion applies to those claiming in succession to the deceased. Goodgame v. Dawson, supra; Jennings v. Provident Life & Accident Ins. Co., 246 Ala. 689, 22 So.2d 319; Jennings v. Jennings, supra; Niehuss v. Ford, supra; Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115; Campbell v. Laningham, 274 Ala. 138, 145 So.2d 824; and "The Dead Man's Rule in Alabama," Alabama Law Review, V. 26, 403, 406 (1971).

In the *Federal Land Bank* case, supra, the Court does specifically state that "The rule applies to protect those claiming in succession to the deceased the same as the estate of the deceased, when the other conditions exist." However, the sentence preceding this rule was as follows:

" . . . the spirit of [the Dead Man's Statute] prohibits the testimony . . . when the deceased person's estate, or that of *his grantee* . . . is interested in the result of the suit." [Emphasis ours.]

Justice Foster cited no direct authority for that statement. The words "succession" and "his grantee" are important in examining the decision. The respondent, Federal Land Bank, was the "grantee" of the deceased, but the respondent's interest was acquired prior to the death of the complainant's husband. And, as already noted, the complainant's excluded testimony related to a completely inter vivos transaction. The "claiming in succession to the deceased" rule set out in the *Federal Land Bank* opinion and relied upon by the authorities cited above cannot be taken out of context. The appellants in the case at bar obviously did not take the rule out of context and understandably relied on the *Federal Land Bank* case, supra, as authority for extending the meaning of the word "succession" to include a "grantee" who acquired his interest during the life of the deceased. It is interesting to note that five years after *Federal Land Bank*, Justice Foster, again speaking for the Court, in Goodgame v. Dawson, supra, stated as follows:

"It [the exclusion contained in the Dead Man's Statute] is said not to apply to the protection of those ' who though claiming title through the deceased, derive such claim from transactions inter vivos."

For the foregoing reasons, I would expressly overrule Federal Land Bank v. Curington, supra.

The last case relied on by the appellants in their contention that Couch was not competent to testify as to the agreement with his, the appellee's, deceased wife is Smith v. Cook, supra. That case involved a suit to establish a disputed boundary line. As set out in the Wallings' brief at page 53, Mr. and Mrs. Smith claimed by adverse possession to an alleged line which they contended had been agreed upon by them and by Cook's predecessor in title who died after he had conveyed to Cook. In ruling in *Smith* that "The testimony of Mrs. Smith in this connection is not admissible under [the Dead Man's Statute] because of the death of the predecessor in title of appellee with whom she alleges the agreement was made", Justice Foster, as he did seven years later in the *Federal Land Bank* case, supra, failed to recognize that if the proposed testimony involved an inter vivos transaction with a party subsequently

deceased, and if the estate of the deceased or a successor thereto was not interested in the results of the suit, the exclusionary rule does not prohibit the proposed testimony. Therefore, I would overrule Smith v. Cook, supra, and affirm the trial court.

HARWOOD and FAULKNER, JJ., concur.