This is the second appeal of this case. In Poston v. Gaddis,335 So.2d 165 (Ala.Civ.App. 1976), cert. denied, 335 So.2d 169
(Ala.), the Court of Civil Appeals reversed and remanded a judgment in favor of the plaintiffs Gaddis because the trial court erred in denying defendant Poston the right to a jury trial in the breach of contract action and on the counterclaims. The facts out of which the controversy arose are well stated in the opinion of the Court of Civil Appeals, id. 335 So.2d at 166:
 "[Hubert D. Gaddis and Martha A.T. Gaddis] and defendant James E. Poston entered into a contract for the construction and sale of a house in consideration of payment by plaintiffs of $38,500.00. During construction certain changes were made departing from the original plans and specifications. Such changes resulted in an overrun from the contract price. The authorization for many of the changes was disputed in the evidence. Defendant presented plaintiffs a statement for the increased price due to the alleged overrun. Plaintiffs disputed the overrun and authorization of the changes in construction. Defendant refused to convey to plaintiffs unless paid some $43,000.00, and placed the house on the market for sale. [Mr. and Mrs. Gaddis] brought suit against Poston and his wife for specific performance and damages for breach of contract. . . ."
* * * * * *
 "Subsequent to plaintiffs filing suit, defendant sold and conveyed the property to James and Charlotte Oliver. Plaintiffs amended suit and added the Olivers as defendants for specific performance."
* * * * * * *Page 1101 
 "The matter proceeded to trial on complaint and counterclaims. Judgment was entered denying specific performance to plaintiffs, denying relief on defendants' counterclaims but granting damages to plaintiffs for breach of contract."
335 So.2d 165, 166.
Plaintiffs Gaddis did not appeal the denial of their plea for specific performance on the first appeal. After the reversal of the award of money damages on the first appeal, and on remand, plaintiff Martha A.T. Gaddis filed a suggestion of the death of plaintiff Hubert D. Gaddis and, as executrix of the estate of Hubert D. Gaddis represents the estate. The second action was for damages claimed by plaintiffs and for damages claimed by defendant Poston on his counterclaim. The jury found for plaintiffs Gaddis solely in the sum of $10,196.60. Defendant Poston appeals. We reverse and remand.
 Jurisdiction
At the outset, we are faced with a jurisdictional problem. Defendant Poston indicates, in his brief, that his counterclaim for damages of $25,000 for breach of the amended construction contract was dismissed on his own motion. But, the record contains no formal order dismissing the counterclaim. No motion to dismiss the counterclaim was either orally made or granted during the course of the trial. The only notation of record is on the margin of the counterclaim by the label "COUNTERCLAIM" where there appears the word "out." Clearly, this notation is not sufficient under Rule 58 (b), ARCP to constitute an order of court dismissing the counterclaim, because it does not appear who wrote this word or when it was written and the requisite "intention to adjudicate" cannot be inferred under these circumstances.
The case was tried to the jury solely on plaintiffs' claim, and the jury responded by giving the plaintiffs a verdict. Thus, a threshold jurisdictional question is presented: "In the absence of an order of dismissal of the counterclaim or a Rule 54 (b), ARCP order, is the decree of the trial court a final judgment capable of supporting an appeal?" We think so.
In Hingle v. Gann, 368 So.2d 22 (Ala. 1979), this Court held that where the trial court's final decree in a boundary dispute established the true boundary between the parties but made no mention of damages for trespass sought by both plaintiffs and defendants, each claim for money damages will be deemed denied by the trial court.
Similarly, in Johnson v. McDole, 394 F. Supp. 1197 (W.D.La. 1975), the federal district court in Louisiana (in which an action was brought to enforce a California judgment) held that where a default judgment on a cross-complaint, containing two claims, failed to mention one claim and no evidence was offered on that point at the default judgment hearing, the claim was deemed to have been rejected by the California court.
It is thus we conclude that when no evidence is presented concerning a claim, the court's oral charge to the jury makes no mention of such claim and judgment is rendered on all other issues presented and covered by the oral charge, then the judgment will be considered a final judgment as to all issues.Authorities, supra. On the other hand, if a claim is to be adjudicated in a separate proceeding, the record must reflect an order of severance or an order for a separate trial entered prior to judgment. See Key v. Duke Insurance Agency,340 So.2d 781 (Ala. 1976). In the absence of such an order in this situation, the judgment will be deemed a final judgment on all issues pleaded and any claims which are not specifically disposed of in the judgment will be deemed to have been rejected or denied.
 Merits
On this appeal, defendant contends that because there were certain changes made during the construction of the house, this vitiated the original written contract and that the terms of the modified agreement were not sufficiently certain to support an award of money damages. As authority for his position, defendant relies primarily on *Page 1102 Dendy v. Anchor Construction Co., 294 Ala. 120, 313 So.2d 164
(1975). However, in Dendy the Court affirmed a denial of specific performance because the trial court could have concluded that the terms of the agreement to sell land were not clearly understood and that there was sufficient evidence of the abandonment of the contract. Thus, there was no abuse of discretion by the trial court. In the instant case since the demand for specific performance was specifically denied in the first action, we regard Dendy as being inapt authority.
The next issue raised is whether the trial court erred in admitting into evidence over objection a deed executed shortly before trial conveying property from defendant Poston to his wife without consideration. Evidence of one's property transfers after the occurrence of some event which may render him liable in damages is admissible to show a consciousness of liability and a purpose to avoid satisfaction of it. Prestwoodv. Ivey, 273 Ala. 281, 138 So.2d 713 (1962); Burdett v. Hipp,252 Ala. 37, 39 So.2d 389 (1949). Thus, the admission of such evidence does not constitute reversible error.
Defendant also contends that the trial court erred in admitting into evidence over objection a title insurance policy issued to the Olivers, purchasers of the house and lot in question, because the insurance policy was outside the framework of the issues and its admission was in violation of Rule 18 (c), ARCP. Since the policy was not a liability policy of the defendant, Rule 18 (c) does not apply. However, assuming arguendo, that error was committed in the admission of this policy, the error was "harmless" since no substantial rights of defendant Poston were affected. Rule 61, ARCP. The admission of this evidence was clearly not prejudicial.
Defendant next asserts that the trial court erred in giving certain written charges requested by the plaintiffs. These written charges are not of record. Although the Committee Comments to Rule 10, ARAP indicate that Rule 10 abolishes the presumption that if there is any omission from the record of any matter essential to a decision of any question presented on appeal the ruling of the trial court will be deemed correct, inSmith v. Haynes, 364 So.2d 1168 (Ala. 1978), this Court held:
 "We agree with the Court of Civil Appeals in its reiteration of the long-standing and well-settled principle of our cases that a trial court's findings and conclusions on the facts will not be reviewed when it affirmatively appears there was evidence before the trial court which was not in the record on appeal, and that where all the evidence is not in the record, it is presumed the missing evidence is sufficient to support the judgment appealed from. . . ."
* * * * * *
 "[W]e think the appellees had a right to rely on the appellant's designation . . . It is certainly the obligation of the party designating to see that the matters designated are placed in the record."
In the instant case, defendant designated "the entire reporter's record, including all written charges given by the court"; however, it was his obligation to see that all matters designated were placed in the record. Thus, because the written charges requested by the parties are not of record, we cannot review whether the trial court erred in giving the charges requested by plaintiffs.
The next issue raised is whether under the "Dead Man's Statute" (§ 12-21-163, Code 1975), the trial court erred in sustaining plaintiffs' objections to questions concerning the substance of conversations the defendant had with Hubert D. Gaddis, deceased.
Defendant asserts that because he was called by the plaintiffs as an adverse witness and questioned with regard to various aspects of his "transaction" with the deceased, his incompetency under the Dead Man's Statute was waived. Pertinent parts of his testimony indicating how the "Dead Man's Statute" question arose are as follows: *Page 1103 
 [DIRECT EXAMINATION] [By Plaintiffs' Attorney]
"Q You had entered in the contract to build the house for $38,500 had you not?
"A Yes, sir."
* * * * * *
"Q Mr. Poston, your contract with Mr. and Mrs. Gaddis provided that they would pay you the sum of $38,500 upon completion of the house, did it not?
"A Yes, sir. In accordance with these plans."
* * * * * *
"Q I show you a letter dated February 5, 1974, to Col. Gaddis and ask you if you wrote that letter?
 "THE COURT: Gentlemen, while he is looking at that — David, did you get that last exhibit marked?
"THE REPORTER: Yes, sir.
"Q Now, in this letter, that letter is dated February 5, is it not, Mr. Poston?
"A Yes, sir.
"Q And that makes demand upon Col. Gaddis upon certain costs and expenses incurred by you does it not?
"A Yes, sir. In regard to the requested changes.
"Q In regard to the requested changes. That's the only statement you ever gave him of requested changes on that house, isn't it?
"A Well, the changes were his request to me.
"Q That's not answering my question, Mr. Poston. That's the only list or statement of anything you ever gave him on any changes, isn't it?
"A I believe so, yes, sir."
* * * * * *
"Q All right, sir. Do you remember when I took your deposition back in May, the 31st of May, 1974?
"A I remember we had a deposition, yes, sir."
* * * * * *
"Q Mr. Poston, I read you this question, if you recall this: `Now, are you saying under oath that all of those changes were made at his request and his promise to pay for them?' Answer, `Yes, sir. With the possible —', `$125', `The actual value of some items could stand correction. But the number of items, requested items —', you answered that question in that manner, didn't you?
"A Yes, sir."
* * * * * *
 [CROSS EXAMINATION] [By Defendant's Attorney]
"Q Now, I believe Mr. Fuller asked you if you did not have a conversation with Col. Gaddis sometimes in the later part of January with respect to these additional costs? Is that true?
 "MR. FULLER: No, sir. I did not ask him if he had a conversation, I asked him if he had a cost overrun.
"MR. PITTMAN: Did you have a conversation?
"A Yes, sir.
"MR. FULLER: We object to any conversations.
"Q In the latter part of January with respect to cost overruns?
"MR. FULLER: We would object.
"THE COURT: Sustained.
 "MR. PITTMAN: I am not asking him the contents of it just if there were a conversation.
"THE COURT: All right, sir. You may answer.
 "MR. FULLER: I have no objection to the witness answering yes or no. That's what I am fixing to try to tell him. You may answer yes or no.
"Q Was there such a conversation between you and Col. Gaddis in January about costs of these extras?
"A Yes, sir.
"Q All right, sir. Now, what did this February 5th letter say, after this January conversation?
"A Listed the actual — the cost, the items and the cost for each item. *Page 1104 
"Q I will ask you to look at this February 5th letter and I will ask you if there is a detailed breakdown in that letter concerning the cost of these extras?
"A Yes, sir. I have listed twenty items, each one of them giving a cost.
"Q All right. Now, February 5th is subsequent or later than January, the conversation that you had with Col. Gaddis, is it not?
"A Yes, sir.
"Q I will ask you if this letter was in response to that conversation in the latter part of January?
"A It was."
* * * * * *
"Q All right. Mr. Poston, did you have any conversations — put it in the singular. Did you at any time have any conversations with Col. Gaddis about what you were to do in connection with making additions and extras to this dwelling?
 "MR. FULLER: As long as he answers yes or no we have no objections.
"A Yes, sir.
"Q All right. Did you ever have any requests on the part of Mrs. Gaddis with respect to additions to be made to this house over and above the plans and specifications agreed upon?
"A Yes, sir."
* * * * * *
 [RE-DIRECT EXAMINATION] [By Plaintiffs' Attorney]
"Q I followed by asking you this question, `So, in January of 1974, when you asked for the cancellation of his firm commitment, you knew that you were not going to sell that house to him?', and your answer was, `It was quite apparent.' Now, that was your testimony from that witness stand at that prior trial wasn't it, sir?
 "MR. PITTMAN: Wait a minute, now, are you talking about his conversations with Col. Gaddis?
 "MR. FULLER: No, sir. His testimony regarding this lawsuit.
 "MR. PITTMAN: That's based on his conversations with Col. Gaddis, isn't it?
 "MR. FULLER: No, sir. There is nothing there about a conversation with Col. Gaddis. If you want me to read it again, I will.
"MR. PITTMAN: Read it.
"Q `So, in January of 1974, when you asked for the cancellation of his firm committment, you knew you were not going to sell the house to him?' `Well, it was quite apparent.' That was your testimony wasn't it, Mr. Poston?
"A Yes, sir."
* * * * * *
 [RE-CROSS EXAMINATION] [By Defendant's Attorney]
"By Mr. Pittman:
"Q Now, Mr. Poston, I want to — want you to explain to the Court and jury why it was apparent to you in the latter part of January that it looked like or — that Col. Gaddis was not going to buy the house?
"MR. FULLER: We object, please the Court."
* * * * * *
 "MR. PITTMAN: What I am asking the witness, Your Honor, and he has a right to explain any answer, is why was it apparent in the latter part of January. Why was it apparent?
"A Because of conversations that I had with Col. Gaddis in which he had —
"MR. FULLER: We object to the conversations."
* * * * * *
 "THE COURT: All right. Woah. I will cut him off in view of the ruling I made. He can say he had the conversation with Col. Gaddis, but I will not permit him to say what the substance of that conversation was."
 ". . . The policy objective underlying the Dead Man's Statute is to prevent testimony by living witnesses as to transactions with a person who is no longer alive to contradict such testimony. . . ."
Walling v. Couch, 292 Ala. 33, 288 So.2d 435 (1973). *Page 1105 
In German, as Executor, v. Brown Leeper et al., 145 Ala. 364,39 So. 742 (1905), this Court held that where the plaintiff propounded interrogatories to the defendants concerning the time they were employed to perform certain services and the identity of their employer, and the interrogatories were introduced into evidence by the plaintiff, the trial court properly allowed defendants to testify over objection as to their employment by the deceased and to testify to what was said by and agreed to between deceased employer and them with respect to the employment.
In the instant case, defendant himself was called as an "adverse witness" and was questioned by plaintiffs' counsel about, and testified concerning, various matters with regard to his transaction with the deceased, including the signing of the contract with the Gaddises and the surrounding circumstances as to the existence of a cost overrun due to the changes in construction made at the request of the deceased. The defendant's incompetence under the Dead Man's Statute was therefore waived and, following this waiver, defendant was competent to testify concerning the entire transaction about which he was examined by the opposing party. German v. Brown Leeper, supra. See also Sullivan v. Lawler, 222 Ala. 628,133 So. 911 (1931).
In Brett v. Dean, 239 Ala. 675, 196 So. 881 (1940), this Court held:
 "If the opposing party makes the incompetent witness his own he waives any objection to the witness because of incompetency. He may then testify as to the whole transaction about which he was examined by the opposing party. Code, § 7721.
 "So, if answers to interrogatories propounded to the witness under the statute are offered in evidence, this waives any objection to incompetency. German, as Executor, v. Brown Leeper et al., 145 Ala. 364, 39 So. 742." [Emphasis supplied.]
Thus, the trial court's refusal to allow defendant to testify concerning the substance of his conversations with the deceased was error to reverse.
Defendant also contends that the trial court erred in refusing to allow him to amend the pleadings in order to include the failure to comply with the Statute of Frauds as an affirmative defense. Rule 15 (a), ARCP expresses a liberal policy with regard to amendment of pleadings when it states:
 "[A] party may amend his pleading without leave of court but subject to disallowance on the court's own motion or motion to strike of an adverse party; but such amendments shall be freely allowed when justice so requires. . . ." [Emphasis added.]
The Committee Comments are also helpful in interpreting Rule 15:
 ". . . Normally an amendment should be denied only if the amendment would cause actual prejudice to the adverse party. . . ." [Emphasis added.]
Thus, the disallowance of an amendment of pleadings must be based upon a valid ground such as prejudice or undue delay.McElrath v. Consolidated Pipe Supply Co., 351 So.2d 560 (Ala. 1977); Huskey v. W.B. Goodwyn Company, Inc., 295 Ala. 1,321 So.2d 645 (1975).
Plaintiffs assert that because of the passage of time between the original complaint and the proffered amendment, the amendment was properly disallowed. In National Distillers andChemical Corporation v. American Laubscher Corporation,338 So.2d 1269, 1274 (Ala. 1976), this Court stated:
 ". . . [T]he fact that a significant amount of time transpired between the original complaint and the various amendments does not in itself affect our conclusion. In Green v. Wolf Corporation, 50 F.R.D. 220 ([D.C.] N.Y. 1970), the amendments were offered almost four years after the initial complaint. The only explanation given by the attorney was that the laws involved were complex and that the new theory advanced simply did not occur to him previously.
 "`[N]either long delay nor the fact that a proposed amendment is motivated *Page 1106 
by an afterthought of counsel as to the best theory upon which to proceed, by themselves, suffice as reasons for denying leave to amend.' Id. at 223.
 "On the other hand, delay as a predicate for a finding of bad faith would be sufficient reason to deny leave to amend. Id."
Plaintiffs in this case fail to assert how actual prejudice would result if leave to amend the pleadings were granted. InPierside Terminal Operators, Inc. v. M/V Floridian, 423 F. Supp. 962
(E.D.Va. 1976), leave to amend an answer so as to include the Statute of Frauds as an additional triable issue was granted since addition of the Statute of Frauds question would not prejudice the plaintiff in that it did not arise from additional evidence to which plaintiff lodged objection and, it was not outside plaintiff's knowledge of the true facts but, rather, was within facts pleaded and proved. In the instant case as in Pierside, leave to amend the answer might not prejudice the plaintiffs and the trial court may have erred in disallowing amendment. We leave that issue unresolved, however, in order to give the trial court, on reversal, an opportunity to weigh these respective factors.
Because the trial court erred in sustaining plaintiffs' objections based on the Dead Man's Statute, the judgment appealed from must be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.